IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(BOSTON)

| | |
|---|---|
| KAREN L. BACCHI,<br>    Individually and on Behalf of all Persons<br>    Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE<br>INSURANCE COMPANY,<br><br>        Defendant. | Civil Action No. _____ |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Karen L. Bacchi ("Plaintiff"), by and through her counsel, on behalf of herself and all other persons similarly situated (the "Class"), alleges the following facts and claims upon personal knowledge as to matters relating to herself, and upon information and belief as to all other matters based upon the investigation of counsel as follows:

### INTRODUCTION

1.      Plaintiff brings this action, for herself and on behalf of a class of similarly situated participating (or "par") policyholders of Massachusetts Mutual Life Insurance Company ("MassMutual" or the "Company"), for the Company's failure to pay annual policy dividends equal in amount to all surplus (or retained profits) in excess of the 12% maximum statutory limit ("excess surplus") as required by their policies which incorporate Massachusetts law for domestic life insurers issuing par policies. By its failure, MassMutual has retained excess surplus owed to the putative Class and breached its par policies, the implied covenant of good faith and fair dealing, and has been unjustly enriched.

1

## PARTIES

2. Plaintiff Karen L. Bacchi (formerly Karen L. Orton) resides in Andover, Massachusetts, and has owned a participating whole-life policy from March 25, 1975 to the present, initially issued to her by Connecticut Mutual Life Ins. Co. ("Connecticut Mutual") and since 1996 by MassMutual when it merged with Connecticut Mutual.

3. Defendant Massachusetts Mutual Life Insurance Company is a domestic mutual life insurance company of Massachusetts with its headquarters in Springfield, Massachusetts. MassMutual merged with Connecticut Mutual in 1996 and thereby assumed all of Connecticut Mutual's par policies as its own.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 because the amount in controversy for the Class exceeds $5 million and there is diversity between some Class members and the Defendant.

5. Venue is proper here pursuant to 28 U.S.C. § 1391(a) because Defendant is headquartered, and transacted business here and a substantial part of the events or omissions giving rise to the claim occurred here.

## SUBSTANTIVE ALLEGATIONS

### Massachusetts Law Mandates That Domestic Life Insurers' Contracts Provide for the Distribution of All Excess Surplus Annually as Participating Dividends

6. A "participating" insurance policy is one that entitles the holder to share in the life insurer's profits. In contrast, the holder of a "non-participating" insurance policy is not entitled to a share of profits or dividends.

7. In the early 1900's it became clear to the General Assembly of the Commonwealth that life insurers were hoarding (and squandering) surplus at levels far in excess

2

of their realistic needs and, thus, underpaying dividends to their par policyholders. To address the problem in Massachusetts, in 1907, Massachusetts enacted and/or amended Massachusetts General Laws Chapter 175, §§140, 141 and 149 to require each domestic life insurer issuing par insurance policies to pay any and all excess surplus at the end of each year as par dividends.

8. Specifically, § 149 permits a domestic life insurance company, such as MassMutual, to issue participating policies so long as such policies "by their terms give to the holders thereof full right to participate in the accumulations of said company attributable to such business as provided in section [140]."

9. Section 140 states that every domestic life insurer shall provide in "every participating policy of life or endowment insurance... that the proportion of the divisible surplus of the company contributed by said policy shall be ascertained and distributed annually ... beginning not later than the end of the third policy year." Section 140 provides further, in pertinent part, that:

> Every such company shall on December thirty-first of each year or as soon thereafter as practicable, after providing from the funds attributable to its participating business for the reserve required by [§§ 9 and 11] and all other liabilities attributable to such business, including dividends declared upon the capital stock, if any, and such sum as may be held on account of existing deferred dividend policies, and providing also for a contingency reserve not in excess of the [12%] limit prescribed in [§ 141], apportion its remaining funds attributable to such business upon the contribution to surplus plan, as dividends, to all other policies entitled to share therein.

The required reserves per § 140 are defined in M.G.L. c. 175, § 9 (which provides for the computation of reserves, and § 11 (which provides for the computation of assets and liabilities, and requires reserves, as calculated under § 9, as well as all unpaid losses and claims for losses, and all other debts and liabilities, to be designated as liabilities).

10. Section 141 permits a domestic life insurer to retain from its surplus attributable to its participating business:

3

as a safety fund, an amount not in excess of twelve per cent of its reserve for such business, and, in addition thereto, any surplus that may have been contributed by the holders of the guaranty stock of the company, or which has been accumulated for the retirement of said guaranty stock and the margin of the market value of its securities over their book value ... provided that for cause shown, the commissioner may ... permit any company to accumulate and maintain a safety fund in excess of the limit above mentioned... This safety fund shall be in addition to any safety fund accumulated from a mutual domestic life company's surplus funds attributable to its nonparticipating business, which funds may be appointed equitably, in the discretion of the company, as part of any annual dividend on participating business.

11. Thus, under Sections 140 and 141, MassMutual is permitted to retain from its par surplus funds, a contingency reserve or safety fund, equal in amount to no more than twelve per cent of its reserve funds attributable to its par business (the "Safety Fund Limit"). Anything over 12% must be distributed to its par policyholders as an annual policy dividend, unless the Massachusetts Commissioner of Insurance ("Commissioner"), for cause shown, has permitted an accumulation in excess of 12% and published such permission in the Commissioner's Annual Report.

### Plaintiff and the Putative Class Own Par MassMutual Policies Entitled to All the Protections Incorporated Therein from M.G.L. c. 175, §§ 140, 141 and 149

12. MassMutual has issued par policies to Plaintiff and, upon information and belief, over 2 million par policyholders comprising the putative Class. The policies must, and do, contain the requisite dividend language per Section 149. Plaintiff Bacchi's whole-life policy states:

> Upon payment of the premium for the full second policy year, and thereafter at the end of the second and each later policy year, this Policy, while in force other than as Extended Insurance, will be credited with such share of the divisible surplus, if any, as may be apportioned to it by the Company as a dividend.

13. When Connecticut Mutual merged into MassMutual in 1996, Plaintiff and other former Connecticut Mutual par policyholders became par policyholders of MassMutual and their policies thereafter became MassMutual policies.

14. The MassMutual policies do not make specific reference to §§ 140, 141 or 149, but do contain the requisite language that annually "...this Policy .... <u>will</u> be credited with such share of the <u>divisible surplus</u>, if any, as we may apportion to it by the Company as a dividend." (Emphasis added.) Thus, the policies incorporate the requirement for paying annual dividends out of the divisible surplus per § 140 subject to the mandated payout per § 141 of all surplus that exceeds the 12% Safety Fund Limit. As such, MassMutual's policies contain the language required by § 149 providing for the "full right to participate in the accumulations of said company attributable to such business as provided in section [140]."

### MassMutual's Safety Fund Calculation Methods

15. Since 1999, MassMutual has calculated its safety fund each year and submitted it to the Commissioner ("Safety Fund Calculations"). These computations represent MassMutual's annual public assessment of its safety fund and, thus, obligation to pay (any) excess surplus to its par policyholders. However, MassMutual has used three different methodologies for calculating its safety fund since 1999. The Company reported a percentage against the 12% Safety Fund Limit for two years (1999 and 2000) but thereafter, in lieu of a percentage, it calculated its annual safety fund by increasing the limit above 12% (for various surplus items that it claimed are excluded from the safety fund), and provided only the dollar amount that it claimed its safety fund fell below the limit each year.

16. To standardize MassMutual's reporting and allow for yearly comparisons (including with Plaintiff's calculations), Plaintiff has normalized all of MassMutual's varying safety fund calculations to compute a safety fund percentage that can be compared to the 12% limit. (That is, rather than *increasing* the Safety Fund Limit above 12% -- as MassMutual did after 2000 for items allegedly excluded from the safety fund -- Plaintiff *deducted* these items

from the safety fund and compared it the 12% limit. The dollar amount MassMutual claims to be under the Safety Fund Limit is the same under both approaches.)

### Calculating the Safety Fund Correctly Demonstrates that MassMutual Retained Excess Surplus That Should Have Been Paid as Par Policy Dividends

17. As is shown below, MassMutual's safety fund exceeds the statutory 12% Safety Fund Limit for at least the years 2003 to the present when calculated properly using the financial items and amounts required by Section 141. Based upon the best financial information currently available to Plaintiff, MassMutual has also exceeded the Safety Fund Limit both prior to 2003, and does so to the present and will continue to do so in the future. Consequently, MassMutual has underpaid par policy dividends in each of these years.

18. The safety fund percentage is to be computed based on a ratio: Actual Par Surplus/Actual Par Reserves. Yet, MassMutual improperly calculates its safety fund by systemically understating its par surplus and overstating its par reserves.

#### Improper Surplus

19. MassMutual understated its safety fund surplus in its Safety Fund Calculations by excluding (as normalized against the 12% limit), at least the following items that should be included: 1) amounts representing what it claims are the margin of the market value of its securities over their book value; 2) its Net Admitted Deferred Tax Asset ("DTA"); and 3) prepaid pension expense.

    a. **Market Value of Securities and AVR:** Section 141 states that MassMutual may hold a safety fund from its par business "not in excess of twelve percent of its reserve for such [par] business … and the margin of the market value of its securities over their book value." Converting that statutory language into algebra produces the following mathematical equation: **par safety fund – margin of**

**market value of securities ≤ 0.12 x par reserves.** Long after § 141 was enacted, however, the requirement to subtract the "margin of the market value of its securities over their book value" (or "market value deduction") was subsumed within a modification to the governing statutory accounting principles ("SAP") introducing the use of an Asset Valuation Reserve ("AVR") which adjusted (*i.e.*, lowered) surplus to account for fluctuations in an insurer's market value of securities and other assets. That had been the purpose of separately identifying the market value of securities over their book value prior to the adoption of the AVR under SAP. A safety fund that is calculated correctly cannot take the market value deduction because the AVR has replaced it and is already removed from surplus. Nonetheless, Mass Mutual deducted incorrectly the market value deduction from its safety fund.

b. **Net Admitted Deferred Tax:** MassMutual also has improperly excluded its net admitted DTA from its safety fund, even though the net admitted DTA is *per se* surplus under the governing SAP. The Commissioner granted waivers allowing MassMutual to exceed the Safety Fund Limit in the amount of its admitted DTA for 2001-2005. However, these waivers are invalid because they are based on inaccurate information presented by MassMutual and are contrary to SAP. A virtually identical waiver was held to be "arbitrary and capricious" by a Massachusetts Superior Court in the Business Litigation Session in a case involving a different Massachusetts-domiciled life insurance company. The court held that the Commissioner's waivers were improper because those waivers were issued on grounds that the admitted DTAs were not liquid and/or otherwise immediately available for the payment of policyholder claims, dividends, etc.,

even though admitted DTAs are *by definition* under SAP available to pay claims and dividends. No waivers were granted to MassMutual after 2005 (after the "arbitrary and capricious" decision referenced above was issued).

c. **Pre Paid Pension Expense:** MassMutual improperly deducted its pre-paid pension expenses from surplus for several years even though this is not provided for under SAP.

<u>Improper Reserves</u>

20. MassMutual has overstated its par reserves in at least the following ways: (1) treating non-reserve liabilities as if reserves; and (2) including separate accounts that are legally separate from its par business.

   a. **Non-Reserve Liabilities**: MassMutual has overstated its actual <u>reserves</u> in computing the safety fund by including liabilities which are not life insurance reserves under M.G.L. c. 175, § 9 (which governs the detailed computation of life insurance company reserves, and their certification annually by the Commissioner), or the statutory accounting rules. Examples of these non-reserve items include the following ordinary liabilities: supplementary contracts, dividend accumulations, premium deposit funds, GIC, other contract deposits, contract claims, and policyholder dividends (due and unpaid, and set aside for the following year). In fact, MassMutual's Safety Fund Calculations are contradicted by other contemporaneous filings made by MassMutual.

   b. **Separate Account Liabilities**: MassMutual has overstated its reserves by improperly including its Separate Accounts Statements even though those financials are legally separate and distinct from the par business and, therefore,

cannot be comingled for any purpose (including in calculating MassMutual's divisible surplus and the safety fund).

### The Correct Calculation of MassMutual's Safety Fund

21. When the correct amounts of MassMutual's surplus and reserves attributable to its par business are used, as opposed to the amounts MassMutual publicly reported, and the other understatements of surplus and overstatements of reserves are corrected, MassMutual's actual (correct) safety fund exceeds the Safety Fund Limit in every year since 1999.

22. In each year, MassMutual claimed that its safety fund fell below the Safety Fund Limit. In the table below (left column), MassMutual's yearly safety fund disclosures are computed as a percentage against the 12% limit (as discussed in Paragraphs 15-16 above). As noted above, the Company's computations were based on improperly understated surplus and inflated reserves and are inconsistent with Section 141. In comparison, Plaintiff's subsequent recalculation of MassMutual's actual safety fund relative to the 12% limit (right column) is based on the financial items and amounts actually called for in Section 141, and shows that MassMutual's safety fund exceeded the limit every year since 1999.

12% Safety Fund Limit

| Year | MassMutual's - Based on its Safety Fund Disclosures | Plaintiff's - Based on § 141 Requirements |
|---|---|---|
| 1999 | 9.13% | 12.02% |
| 2000 | 9.61% | 12.78% |
| 2001 | 7.06% | 15.00% |
| 2002 | 7.38% | 15.57% |
| 2003 | 8.01% | 14.15% |
| 2004 | 6.98% | 13.14% |
| 2005 | 6.16% | 12.38% |
| 2006 | 7.50% | 13.59% |
| 2007 | 6.70% | 14.04% |

9

|  |  |  |
|---|---|---|
| 2008 | 3.03% | 16.09% |
| 2009 | 4.97% | 15.11% |
| 2010 | 4.65% | 15.87% |

23. Plaintiff's safety fund calculations are conservative because they are based on information currently available to Plaintiff. To the extent MassMutual has otherwise manipulated its surplus, reserves or other assets or liabilities, its safety fund may exceed the percentages identified above, entitling Plaintiff and the Class to additional damages.

24. Based on Plaintiff's and her counsel's investigations, and these calculations, Plaintiff and the Class have suffered damages in excess of $5 million.

### The Discovery Rule/Fraudulent Concealment

25. Plaintiff was unable to discover earlier that Defendant was retaining excess surplus because: (1) MassMutual's annual Safety Fund Calculations since 1999 as submitted to the Commissioner (falsely) show that its surplus is under the safety fund limit (in most years it uses dollar amounts rather than percentages to make the claim); and (2) MassMutual's Annual Statements filed with the Commissioner lack sufficient detail to allow Plaintiff to calculate its safety fund independently. Most importantly, neither MassMutual's Annual Statements nor its Safety Fund Calculations separately detail the amount of surplus and reserves attributable to its par business (versus its non-par business) with sufficient detail to verify their (in)accuracy. It is not until the correct amounts of par surplus and par reserves were discovered recently that Plaintiff could determine that MassMutual's surplus exceeded the 12% limit.

26. Because MassMutual misrepresented its safety fund, and covered up the true amount of its dividend obligations, in disclosures sent to the Commissioner (*e.g.*, by claiming it was both complying with the relevant contractual/statutory limit regarding its par surplus and reserves and reporting it correctly), Plaintiff and the Class could not reasonably have discovered,

and were prevented from discovering, the Company's failure to comply with its insurance policies and the statutes incorporated therein.

27. Similarly, MassMutual communicated directly with its par policyholders through annual policy statements, annual reports and otherwise, yet failed to disclose to them that the Company's surplus exceeded the Safety Fund Limit in those years, that it was underpaying and underreporting annual dividends due to the par policyholders, and/or any other information that would have allowed the Plaintiff and the Class to independently and correctly calculate the safety fund.

28. Additionally, once MassMutual submitted its Safety Fund Calculations, it had a duty to use true and accurate calculations, which it failed to do in breach of its contractual duties to the Class.

29. Plaintiff Bacchi only recently learned that MassMutual was violating their contracts and the safety fund law incorporated therein and was thus underpaying its annual dividends shortly before the filing of this complaint.

30. Therefore, any otherwise applicable statutes of limitation are tolled from at least the filing of the first false Safety Fund Calculation in 1999 under the Discovery Rule and/or the doctrine of fraudulent concealment.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure seeking to represent a class of all persons who own or have owned MassMutual participating policies from 1999 to the present (the "Class"). Excluded from the Class are MassMutual's directors and senior management, and any entity related to or affiliated with MassMutual and the legal representatives, heirs, successors-in-interests or assigns of any such excluded entity, and this Court and its personnel.

32. The members of the Class are so numerous that joinder of all members is impracticable. MassMutual has issued participating policies to Plaintiff and, upon information and belief, over 2 million other putative Class members. Class members can be identified from the records maintained by MassMutual and notified of the pendency of this action by mail using a form of notice similar to that customarily used in other class actions.

33. Plaintiff will fairly and adequately represent and protect the interests of all members of the Class. Plaintiff has retained competent counsel experienced in policyholder class action litigation in both state and federal courts nationwide – including an action based on the same causes of action alleged herein – and intends to prosecute this action vigorously.

34. Plaintiff's claims are typical of those of the other members of the Class because (a) each has a par policy imbued with identical rights to annual dividends and/or with substantially identical language supporting his/her claim, and (b) the harm sustained by Plaintiff and all of the members of the Class arises from and was caused by the same course of conduct in which MassMutual engaged. The Plaintiff does not have interests that are antagonistic to or in conflict with the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. Common questions include:

(a) What is the correct method for calculating MassMutual's safety fund;

(b) Whether and by how much MassMutual's safety fund exceeded the statutory 12% limit during the Class period;

(c) Whether MassMutual retained excess surplus, in breach of its contracts and other duties, that should have been distributed as policy dividends to its participating policyholders comprising the Class;

(d) Whether the waivers obtained by MassMutual from the Division of Insurance for 2001 - 2005 are valid;

(e) Whether the Class is entitled to an accounting;

(f) Whether the applicable statutes of limitations have been tolled by the Company's false safety fund disclosures and other deceptive acts;

(g) Whether the Class has sustained damages and the proper measure of such damages; and

(h) Whether equitable relief is appropriate to prevent the continuation of the alleged wrongdoing.

36. In retaining excess surplus and failing to pay the annual dividends it was contractually obligated to pay under its policies that incorporate the governing statutes, MassMutual has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

37. Common questions of law or fact predominate over individual questions because policyholders are all adversely affected by the Company's failure to honor its contracts.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the harm suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged. Moreover, absent class treatment, there is a high risk of inconsistent judgments by different courts hearing the identical claims of over 2 million policyholders. Plaintiffs know of no difficulty that will be encountered in the management of this litigation to preclude its maintenance as a class action.

## COUNT I –
## BREACH OF CONTRACT

39. Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

40. Plaintiff Bacchi's whole-life policy states that annually it "will be credited with such share of the divisible surplus, if any, as may be apportioned to it by the Company as a dividend."

41. Consistent with the requirements of M.G.L. c. 175, §§ 140, 141 and 149, each Class member's policy contains substantially similar language entitling them to full participation rights in MassMutual's divisible surplus, and payment of the excess surplus therein annually as par policy dividends.

42. Plaintiff and the Class have fully performed their part of their insurance contracts.

43. MassMutual has breached its contracts by failing to pay out the full amount of its excess surplus due to Plaintiff and the Class as policy dividends.

44. The Company's breaches of contract have damaged Plaintiff and the Class in an amount to be proven at trial.

## COUNT II –
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

45. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

46. Plaintiff entered into a participating insurance policy/contract with MassMutual all of which policies must "by their terms give to the holders thereof <u>full</u> right to participate in the accumulations of said company attributable to such business as provided in section [140]." M.G.L. c. 175, § 149 (emphasis added).

47. Plaintiff and the Class have fully performed their part of their insurance contracts.

48. MassMutual has failed to pay out the full amount of its excess surplus due to

Plaintiff and the Class as annual policy dividends.

49. MassMutual acted in bad faith by, *inter alia* (a) submitting Safety Fund Calculations in Massachusetts each year using incorrect financial information, (b) reducing its surplus (or, said differently, increasing its Safety Fund Limit) by the excess of its market value of securities over their book value even though such deduction is inapt and/or is duplicative of the Asset Valuation Reserve ("AVR") which is already deducted from surplus, and/or uses grossly overstated numbers for the excess of the market over book value of its securities, (c) includes Separate Accounts Statements that are legal separate and distinct and thus inapplicable, and (d) otherwise understates surplus and overstates reserves as alleged in this complaint.

50. MassMutual has violated its par policies, which incorporate the governing statutes, Sections 140, 141 and 149, and consequently breached the implied covenant of good faith and fair dealing by retaining excess surplus due to Plaintiff and the Class.

51. The Company's breaches of the implied covenant of good faith and fair dealing have damaged Plaintiff and the Class in an amount to be proven at trial.

## COUNT III – UNJUST ENRICHMENT

52. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

53. Because the Company will be unjustly enriched if it is allowed to retain such funds, all excess surplus (that exceeding the 12% safety fund limit) should be disgorged to Plaintiff and the Class.

54. This relief is appropriate to the extent Plaintiff and the Class may have no adequate remedy at law.

## COUNT IV – MONEY HAD AND RECEIVED

55. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

15

56. MassMutual owes Plaintiff and the Class their distribution of excess surplus for money had and received from par policyholders when they (over) paid their policy premiums, which surplus is attributable to the par policyholders, and which funds must be paid to the Class as dictated by contract and the statutes incorporated therein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the Court to:

A. Certify this case as a class action;

B. Grant judgment against MassMutual on all Counts and for damages in such amount as the Company was required by its contracts, incorporating per M.G.L. c. 175, §§ 140, 141 and 149, to distribute as policy dividends to Plaintiff and the Class, including statutory interest thereon;

C. Grant all appropriate equitable and/or injunctive relief against MassMutual (including for an accounting as necessary) to the extent the Court determines that an adequate remedy at law does not exist;

D. Award Plaintiff her costs and disbursements incurred in maintaining this action, including reasonable attorneys' and experts' fees and other expenses, and pre-and post-judgment interest; and

E. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated: July 11, 2012

Respectfully submitted,

By Plaintiff,
By their attorneys,

**ADKINS, KELSTON & ZAVEZ, P.C.**

_/s/ Jason B. Adkins_
Jason B. Adkins, BBO #558560
John Peter Zavez, BBO #555721
90 Canal Street, 5th Floor
Boston, MA  02114
Phone (617) 367-1040
Fax (617) 742-8280

_/s/ Andrew Friedman_
Andrew Friedman
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
(602) 776-5902

and

_/s/ Mark A. Chavez_
Mark A. Chavez
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA  94941
(415) 381-5599

**Attorneys for Plaintiffs**