UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN L. BACCHI, Individually and on Behalf of all Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>Defendant | Civil Action No. 12-cv-11280-DJC |

ORDER ON PLAINTIFF'S MOTION TO ENFORCE DEFENDANT MASSMUTUAL'S WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE OR, ALTERNATIVELY, TO PRECLUDE MASSMUTUAL FROM INTRODUCING EVIDENCE IMPLICATING ADVICE OF COUNSEL (#63)

June 22, 2015

CABELL, U.S.M.J.

Currently before the Court is Plaintiff Karen L. Bacchi's Motion to Enforce Defendant MassMutual's Waiver of the Attorney-Client Privilege or, Alternatively, to Preclude MassMutual from Introducing Evidence Implicating Advice of Counsel. (Dkt. No. 63.) Based upon the parties' papers, the oral argument held on May 15, 2015 and the relevant case law, the plaintiff's motion is DENIED. The reasons for this ruling are set forth below.

I. **BACKGROUND**

The plaintiff is the named member of a class action suit brought in 2012 by MassMutual policyholders, who contend that the defendant MassMutual failed to distribute surplus funds to policyholders as required by law. Massachusetts law limits the "surplus" funds that a mutual life

insurance company may retain from its "participating business" to "an amount not in excess of twelve percent of its reserve for such business . . . and a margin of the market value of its securities over their book value . . . ." M.G.L. c. 175, § 141.  The amount that the defendant is permitted to retain is referred to as a "safety fund." *Id*.  The plaintiff's main contention is that the defendant improperly inflated its safety fund by manipulating certain component elements of the safety fund calculation.  This allegedly allowed the defendant to retain funds that it otherwise would have been obligated to distribute to policyholders.  (Dkt. No. 1.)

On September 10, 2013, the defendant filed an answer containing a number of affirmative defenses, including that it acted in good faith (9th affirmative defense), and that its actions were approved by the appropriate regulatory agency (14th affirmative defense).  (Dkt. No. 36.)  The defendant contends that its safety fund calculations complied with applicable law, as evidenced by the fact that it has annually submitted its calculations to the Massachusetts Division of Insurance (DOI), the filings have been consistent with the DOI's guidance regarding proper safety fund calculation, and the DOI has never advised the defendant that any of its filings were or are incorrect.  (Dkt. No. 69 at Ex. 18.)

The case is now in the late stages of discovery.  Fact discovery began in late 2013 and was initially set to close in December 2014, but was extended twice at the joint request of the parties. In February 2015, the plaintiff filed two motions to compel the production of several hundred pages of documents, interrogatory responses and deposition testimony which the defendant has refused to provide on the ground of attorney-client privilege or the work product doctrine.  To allow time to hear the plaintiff's motions, I granted a third extension of the fact discovery deadline, which was then set for April 2015.

The plaintiff claims that the defendant has waived any privilege or protection and therefore should be compelled to produce any previously withheld documents. The plaintiff argues that the defendant has waived any privilege because it provided an inadequate privilege log under Fed. R. Civ. P. 26(b)(5). Independently, the plaintiff also argues that the defendant has implicitly waived any privilege because it has asserted certain affirmative defenses which necessarily put at issue legal advice the defendant must have received before acting. She asks that the Court accordingly order the defendant to produce withheld documents, amend its interrogatory responses and provide deposition testimony, or preclude the defendant from offering any evidence that implicates advice of counsel. (Dkt. Nos. 63-64.)

**II.  DISCUSSION**

   **A. <u>Adequacy of the Defendant's Privilege Log</u>**

The defendant has produced documents in this case on a rolling basis, beginning with an initial production in October 2013, and continuing to a final production in March 2014. The parties confirmed at oral argument that they had agreed upon a format for the production of documents -- documents were to be produced as TIFs along with any available metadata -- and that the format of the defendant's production complied with this agreement. The defendant did not withhold any documents from production but it did redact the portions of documents it contended were privileged. Where it deemed an entire document to be privileged the defendant redacted the entire document except for the date, author and recipient of the document. (Dkt. No. 77.)

The defendant produced its documents, Bates stamped, along with a privilege log. The privilege log contained a corresponding Bates range, a privilege claim, and a brief explanation for the privilege claim. The privilege log did not contain the date or author or recipient(s) for

3

any particular document, but that information was contained either in the document itself or in the metadata that accompanied the document. Thus, assuming one reviewed documents and the privilege log in tandem, all of the pertinent information necessary to assess a claim of privilege could be obtained.

This process appeared to function well enough through several document productions, until May 2014, when the plaintiff first raised concerns about the format and adequacy of the defendant's privilege logs. The parties discussed the plaintiff's concerns during a series of telephone conferences that began in late summer 2014 and continued through early fall. Between October 2014, and February 2015, the plaintiff did not raise the privilege log issue again. Notwithstanding that relative calm and its suggestion that the parties had satisfactorily resolved any issue, the plaintiff now asks the Court to find the defendant's privilege log so inadequate as to constitute a waiver of any privilege or protection. (Dkt. No. 64.) Specifically, the plaintiff argues that: 1) the privilege log should be self-contained so that the plaintiff can assess each privilege claim without the need to refer to the actual redacted document; 2) the defendant's itemized redaction log is akin to a blanket assertion of privilege because sometimes the same description is used for more than one document; and 3) the document descriptions are too vague to allow the plaintiff to properly assess whether particular documents are privileged. (*Id.*)

The defendant, as the party advancing the claim of privilege, has the burden of establishing each element of the privilege. *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 351 (D. Mass. 1998). Generally, a privilege claim is made by serving a privilege log that separately lists each document, specifies who created the document and all recipients, and concisely states the basis for the claim of privilege. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240

F.R.D. 44, 47 (D. Conn. 2007). The party withholding documents must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Applying these principles here, it would undoubtedly have been ideal for the defendant to produce a log which on its own provided all of the information necessary for the plaintiff to assess the privilege claims, as doing so surely would have facilitated and expedited the plaintiff's review and analysis. That being said, the court finds that the privilege log is sufficiently adequate when viewed alongside the corresponding document(s) to allow the plaintiff to assess the privilege claim. Taken together, the documents allow one to determine for each communication who created it, when it was created, to whom it was sent, the nature of the communication, and the subject matter to which the communication referred. That is sufficient to satisfy the requirements of Rule 26(b)(5), which mandates that a party provide information "in a manner" that will allow for adequate analysis but does not otherwise require that all of the information be contained in the log itself. The plaintiff has not cited any cases either requiring a specific format or prohibiting the format the defendant has used here, and the cases the plaintiff does cite are distinguishable because they involve either a failure to log particular documents at all, or the failure to log documents individually, *i.e.,* through use of categorical designations applying to groups of documents. *Neelon v. Krueger,* No. 12-11198, 2014 WL 7251023 (D. Mass. Dec. 19, 2014)(waiver where plaintiff served categorical privilege log that did not include precise dates, the number of documents for which privilege was claimed or the names of all recipients and senders); *Thelen Reid & Priest LLP v. Marland*, No. C 06-2071, 2007 WL 578989 (N.D. Cal. Feb. 21, 2007)(waiver of privilege for documents that were not included on privilege

log at all). See also *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007)(production of certain documents ordered based not on insufficiency of log, but on actual contents of documents following *in camera* review); *In re Chevron Corp.*, No. 10 MC 00002, 2010 WL 4861351 (S.D.N.Y. Nov. 30, 2010)(production ordered based not on insufficiency of log, but on fact that certain logged documents were clearly non-privileged).

Finally, even assuming that the standard practice among the bar favors providing a fully adequate stand-alone log, the Court is not inclined to order the defendant to create a new, more robust log here where doing so would delay the completion of discovery, and where the plaintiff's unexplained delay in raising this issue timely has at least helped to exacerbate what in all likelihood could have been an easily resolvable discovery matter.[1]

### B. Whether the Defendant Implicitly Waived Privilege by Asserting Good Faith and Regulatory Approval Defenses

The defendant's answer pleads among several affirmative defenses that it acted in good faith (9th affirmative defense), and that its actions were approved by the appropriate regulatory agency (14th affirmative defense). (Dkt. No. 36.) The plaintiff contends that these affirmative defenses necessarily put at issue the legal advice the defendant received from counsel, and thus implicitly waive the attorney-client privilege. (Dkt. No. 64.) The plaintiff argues that the defendant supports its good faith defense by stating that it submitted filings to the DOI regarding its safety fund calculations and then subsequently relied on the fact that the DOI did not contest those filings. (*Id.*) She contends that the defendant, therefore, must be arguing that it subjectively believed its safety fund practices were lawful. The plaintiff reasons that, since the defendant's in-house counsel handled both the actual safety fund calculations and related

---

[1] To the extent any genuine issue remains with respect to this issue, the Court strongly encourages the parties to continue to discuss this matter, as they have shown they have done in the past.

reporting of information to the DOI, it follows that the in-house counsel's advice on these subjects is at issue and thus should be discoverable. (*Id*.) The plaintiff asks the Court to either compel production of privileged documents on these subjects or preclude the defendant from "proffering any evidence that implicates or depends, directly or indirectly, on the involvement or advice of its in-house lawyers." (*Id*.)

An "at issue" waiver occurs when a party injects certain claims or defenses into the case which implicate, *i.e.,* put "at issue" the communications of counsel. *Clair v. Clair*, 464 Mass. 205, 219 (2013). The classic example is where a defendant defends itself against a claim on the ground that it relied on the advice of counsel in performing or failing to perform the challenged conduct. In such a case, the defendant voluntarily puts its attorney's advice at issue and fairness dictates that the opposing party should be able to discover all of the attorney's communications on the particular subject, not just the advice that is helpful to the defendant. *Banco do Brasil, S.A. v. 275 Washington Street Corp.*, No. 09-11343, 2011 WL 3208027, *3 (D. Mass. July 27, 2011).

It is not always easy to pinpoint the exact moment a waiver has occurred, and the case law in this area is not completely settled. As the First Circuit itself has said, "the concept of implied waiver of attorney-client privilege is not well-developed in this circuit. Even in those circuits which have had greater opportunity to discuss the contours of the implied waiver theory, the analysis is fact intensive and based on a less than definitive standard of fairness . . . ." *U.S. v. Desir,* 273 F.3d 39, 45 (1st Cir. 2001)(internal citations omitted). But merely pleading a good faith defense does not by itself waive privilege. See *Banco do Brasil, S.A.*, 2011 WL 3208027 at *3 (the "mere fact that the [defendant] believes that it acted in good faith under its lease

agreement, and that its counsel was involved in the process, does not constitute a waiver of attorney-client privilege").

Some courts in this circuit have used the three factor test first set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). See, e.g., *Sax v. Sax*, 136 F.R.D. 542 (D. Mass. 1991); *Savoy v. Richard A. Carrier Trucking*, 178 F.R.D. 346, 350 (D. Mass. 1998). That inquiry asks: 1) whether the proponent of the privilege took some affirmative step such as filing a pleading; 2) whether the affirmative act put the privileged information at issue by making it relevant to the case; and 3) whether upholding the privilege would deny the opposing party access to information vital to its case. *Hearn*, 68 F.R.D. at 581. More recently, the trend has been to follow the Second Circuit's approach in *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), which limited *Hearn* by additionally requiring that the privileged information be not only relevant, but also actually relied upon by the privilege holder to support a claim or defense in the case. See *In re County of Erie*, 546 F.3d at 228; see also *Banco do Brasil, S.A.*, 2011 WL 3208027 (explaining that implied waiver requires something more than that the privileged materials are relevant: "The privileged information itself must have independent relevance to the claim or defense because of its privileged status."); *Trustees of Boston Univ. v. Everlight Electronics Co. Ltd.*, No. 12-cv-11935, 2014 WL 5786532 (D. Mass. Sept. 24, 2014)(explicitly following *Erie*)(affirmed in relevant part and reversed on other grounds in *Trustees of Boston Univ. v. Everlight Electronics Co., Ltd.*, No. 12-cv-11935, 2015 WL 3407555 (D. Mass. May 27, 2015)).

The "reliance" element in *Erie* addresses the concern that, as a practical matter, there will be very few privilege disputes where the *Hearn* factors are not met. Rare is the party who will expend the resources to seek disclosure of an opponent's privileged materials where the privileged materials are not both relevant and helpful to the case of the party seeking disclosure.

8

*Erie*, 546 F.3d at 227. In this Court's view, the *Erie* approach more reasonably balances the right of the plaintiff to discover truly relevant and vital information with the right of the defendant to protect from disclosure privileged communications not germane to the instant case. Accordingly, that is the approach the Court applies here.

Under *Erie* and similar cases, it is not necessary for purposes of proving the reliance element to show that the defendant has stated an intent to introduce or use evidence of attorney communications at trial. Rather, it is sufficient if the defendant's defense relies on certain facts that can only be tested or rebutted if the adversary is given access to the privileged material. *Erie,* 546 F.3d at 229. For example, if the defendant were to raise the defense that it acted based on its own subjective good faith belief that its actions were lawful, then the reliance element would likely be met, and that is so even if the defendant were to state that it did not intend to introduce any evidence regarding its attorneys' advice. *Id.* at 228 (discussing *Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998)). That is because the plaintiff, in order to test the assertion of good faith, would need to know whether the defendant received any legal advice suggesting that its actions were in fact not lawful. *Id*.

*McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916 (N.D. Ill. 1989), is illustrative. *McLaughlin* involved a labor dispute in which the defendant company asserted an affirmative defense of good faith reliance on opinions it had received from the Department of Labor. To support the defense, the defendant submitted an affidavit from one of its attorneys summarizing the guidance the company had received. *McLaughlin*, 714 F. Supp. at 917-18. The plaintiff sought to depose the attorney. The defendant moved to quash the deposition subpoena on the ground of privilege. *Id*. at 918. It argued that the attorney's legal advice was not at issue because the company's defense relied on guidance from the Department of Labor, not its

9

attorneys. *Id*. at 918-19. The court disagreed, explaining that the defendant's submission of an affidavit from its attorney implied that "their interpretation of DOL actions [was] reflected in their counsel's interpretation and understanding of DOL actions." *Id*. at 919-20. That being the case, the defendant could not pick and choose which of its attorneys interpretations were discoverable. *Id*. at 920.

By contrast, there is no waiver if the defendant intends to establish its good faith defense by showing that its conduct was actually lawful, or was actually approved by regulators, and does not intend to rely on counsel's opinion or advice. See *Banco do Brasil S.A.*, 2011 WL 3208027 at *3. That is because such a defense depends on objective facts, making the advice of the defendant's counsel irrelevant. *Id*. (finding no waiver where bank's counsel intended to testify as to the steps he took to obtain regulatory approval because, on those facts, bank's defense was not that it was excused from performing an obligation because it relied on advice of counsel, but rather that it actually had performed what it was required to do); *Henry v. Quicken Loans*, 263 F.R.D. 458, 469 (E.D. Mich. 2008)(distinguishing argument that conduct actually was legal, which would not result in any waiver, from argument that party acted in good faith belief that its actions were legal).

*Banco do Brasil,* cited above, involved a commercial lease dispute that turned on whether the defendant bank had fulfilled its obligation to make a good faith effort to obtain regulatory approval to open a bank branch on the leased premises. *Banco do Brasil*, 2011 WL 3208027, at *1. To support its case, the bank filed an affidavit by its attorney explaining the meetings the bank had had with regulators and the filings it had submitted. *Id*. at *2. The court found no waiver of privilege based on the attorney's affidavit because the bank's argument was not that it

10

had relied in good faith on its attorneys, but rather that the objective facts regarding the steps it took to obtain regulatory approval would demonstrate that it acted in good faith. *Id*. at *3

With respect to the present case, it appears undisputed that the defendant's in-house counsel participated in the preparation and submission to the DOI of the filings at issue. Among other things, counsel received guidance via a facsimile from the DOI, notated words or some communication on it, and circulated the facsimile to others within the company. Presumably, counsel at some point during this process also expressed some thought as to how the company should proceed. However, the defendant contends that it does not intend to rely on counsel's advice for purposes of asserting its good faith defense. Rather, it will argue that it took the same types of steps that other similar situated entities would take if they were proceeding in good faith to do what the law required. The defendant says it will argue that it accepted guidance from the DOI regarding the filing of safety fund calculations, followed that advice, and then subsequently inferred from the DOI's response (or lack of response) that it (the defendant) had acted properly. As such, the defendant argues that, while it relied on counsel to some extent in determining how to proceed with respect to the preparation and submission of its filings, it will not rely on the advice of counsel for purposes of showing that it acted in good faith.

In light of the foregoing, the Court finds that the defendant has not waived any privilege or protection by virtue of asserting the defenses of good faith and regulatory approval. Unlike the scenario presented in *McLaughlin*, the plaintiff does not presently need to inquire into counsel's advice or thoughts in order to interpret the DOI's guidance regarding safety fund calculations, or to assess whether the defendant had a good faith basis to follow that guidance. The defendant has produced the actual facsimile from the DOI and intends to argue, simply, that its actions accorded with the guidance contained therein, and were consistent with the actions others in their

position would take. The plaintiff does not need to discover counsel's privileged communications to test whether this defense has any merit; rather, it has been provided with the same DOI information the defendant received and intends to rely on, and thus is in a position to test and rebut the defendant's assertions.[2]

**III.    CONCLUSION**

The plaintiff's Motion to Enforce Defendant MassMutual's Waiver of the Attorney-Client Privilege or, Alternatively, to Preclude MassMutual from Introducing Evidence Implicating Advice of Counsel is DENIED. (Dkt. No. 63.) The Court will schedule a status conference to set deadlines for the completion of discovery in light of this ruling.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: June 22, 2015

---

[2] The plaintiff's request for an order precluding the defendant from offering or making use of any evidence implicating the advice of in-house counsel is premature at this juncture. For one, the defendant has represented that it does not intend to offer or make use of any such evidence. More generally, though, determinations regarding whether evidence should be excluded at trial will be made closer to the time of trial, by the judge presiding over the trial.