UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KAREN L. BACCHI, Individually and on Behalf of all Persons Similarly Situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-cv-11280-DJC |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant | ) ) | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
NON-PRIVILEGED DOCUMENTS (#65)

June 22, 2015

CABELL, U.S.M.J.

Currently before the court is plaintiff Karen L. Bacchi's ("the plaintiff") Motion to Compel Production of Non-Privileged Discovery from defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual" or "the defendant"). (Dkt. 65.) Based upon the parties' papers, the oral argument held on May 15, 2015 and the relevant case law, the plaintiff's motion is DENIED. The reasons for this ruling are set forth below.

**I.    BACKGROUND**

Ms. Bacchi is the sole named plaintiff in this class action suit by MassMutual policyholders who contend that Mass Mutual failed to distribute surplus funds to policyholders as required by law. Massachusetts law limits the "surplus" funds that a mutual life insurance company may retain from its "participating business" to "an amount not in excess of twelve percent of its reserve for such business . . . and a margin of the market value of its securities over their book value . . . ." M.G.L. c. 175, § 141. The

amount that the defendant is permitted to retain is referred to as a "safety fund." *Id*. The plaintiff's main contention is that the defendant improperly inflated its safety fund by manipulating certain component elements of the safety fund calculation. This allegedly allowed the defendant to retain funds that it otherwise would have been obligated to distribute to policyholders. (Dkt. No. 1.)

Following the onset of discovery, the defendant produced Bates stamped documents on a rolling basis between late 2013 and approximately March 2014. For any document the defendant deemed to be privileged, it redacted the privileged portion and produced the remainder of the document, including information sufficient to determine the date, author and recipient. (Dkt. No. 77.) The defendant also served with each production a privilege log which contained a Bates range, a privilege claim, and a brief explanation for the privilege claim for each document.

The plaintiff contends that many of the documents the defendant (partially or fully) withheld as privileged are in fact not privileged and should have been fully produced. She asks that the Court order the defendant to produce these documents, or provide them to the Court or a special master for an *in camera* review. (Dkt. Nos. 65-66.) She also asks that the Court order the defendant to amend its interrogatory responses and provide additional deposition testimony. (*Id*.)

II. **DID MASS MUTUAL IMPROPERLY WITHHOLD NON-PRIVILEGED BUSINESS DOCUMENTS?**

A. Facts

The plaintiff argues that the defendant improperly designated as privileged certain documents which contained only business, financial or accounting advice and which, accordingly, should have been disclosed as non-privileged. The plaintiff narrowed the focus of this claim at oral argument to approximately 200 documents of particular interest. The documents at issue fall into three broad categories: 1) spreadsheets and other documents containing safety fund calculations; 2) documents related to a 1998 Legal Department review undertaken to identify "participating" businesses at that term is defined in the relevant statute; and 3) documents explaining the defendant's rationale for calculating the market value over book value in the way it did. (Dkt. No. 66.)

### 1. Safety Fund Calculations

In an attempt to narrow the issues before the Court, the defendant produced before the May 15th hearing unredacted versions of its safety fund calculation spreadsheets. However, the parties continue to dispute whether the defendant may withhold the handwritten notes of its in-house attorney, William Fisher, taken during committee meetings where the safety fund calculations were discussed. The notes are described on the defendant's privilege log as containing "a request for legal advice . . . as well as legal advice rendered . . . ." (Dkt. No. 100; Ex. 1.) The plaintiff argues that because these notes are the only documents produced related to the committee meetings, they should be viewed as committee meeting notes (rather than attorney notes) and accordingly should be produced as non-privileged. The plaintiff also suggests (without quite arguing) that other committee meeting documents may in fact exist but just may not have been produced.

The defendant responds that it has already produced all non-privileged documents in its possession, custody or control that contain safety fund calculations. The defendant says it has not produced any non-privileged notes from the committee meetings because no such documents exist. (Dkt. No. 77.)

### 2. Participating and Non-Participating Business Analysis

In 1998, when the defendant first began providing annual safety fund calculations to the Massachusetts Division of Insurance, the defendant's in-house attorneys conducted a review of the company's business lines to make an initial determination as to which business lines should be treated as "participating" versus "non-participating" as those terms are defined in the relevant statute. The plaintiff argues that this review did not involve any legal analysis or advice, which means that the defendant's in-house attorneys were acting in a non-legal capacity at the time, which means that their work should be treated as non-privileged. (Dkt. No. 66.) The defendant responds that it has already produced documents that explain which business lines it treats as participating versus non-participating, and has withheld only those documents that actually do contain legal analysis. (Dkt. No. 77.)

### *3. Market Value Over Book Value Calculations*

One of the calculations that may be relevant in determining the amount of surplus funds that can be retained is the "market value over book value" calculation. The defendant has produced documents and served interrogatory responses that explain the specific steps it took to calculate market value over book value, including which securities it included in the definition. The plaintiff contends in essence that, while this discovery helps to explain *how* the defendant performed the calculation, it does not explain *why* the defendant performed the calculation the way it did. She argues that the market value over book value calculation involves arcane accounting principles and that the defendant should thus be required to produce the underlying legal analysis used to determine its specific methodology. (Dkt. No. 66.)

### B. **Analysis**

The attorney client privilege protects confidential communications between an attorney and a client for the purposes of obtaining legal advice. *U.S. v. Bay State Ambulance and Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27-28 (1st Cir. 1989). The defendant, as the party advancing the claim of privilege, has the burden of establishing each element of the privilege. *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 351 (D. Mass. 1998). Generally, a privilege claim is made by serving a privilege log that separately lists each document, specifies who created the document and all recipients, and concisely states the basis for the claim of privilege. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007). Whatever the form, the information provided must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Here, the defendant has served a privilege log that includes a sufficient privilege claim for each document it has withheld. It has also represented in its papers and at oral argument that the documents it has withheld actually do contain legal advice, and that it has produced all non-privileged documents in its possession, custody or control that were either responsive to the plaintiff's requests for production or

required to be disclosed under Rule 26. The plaintiff's motion essentially asks the Court to assume that the defendant's representations are incorrect or untrue. The Court declines to do so.

Under the Federal Rules of Civil Procedure, the Court does play a supervisory role in the discovery process but "the primary responsibility for conducting discovery . . . rest[s] with the litigants." *See* Fed. R. Civ. P. 26 advisory committee's note to 1983 Amendment. The parties have an "affirmative duty to engage in pretrial discovery in a responsible matter that is consistent with the spirit and purposes of [the Rules]." *Id*. Rule 26, which requires that every disclosure and discovery response be signed "by at least one attorney of record," is especially important in that regard. Fed. R. Civ. P. 26(g). By signing the defendant's disclosures and discovery responses, the defendant's counsel represented that the defendant's disclosures were "complete and correct as of the time [they were] made" and that its discovery responses were "consistent with these [Federal] rules [of Civil Procedure]." By signing, the defendant's counsel also placed client and counsel at risk for sanctions should it later be determined that the certification was made improperly. *Id*. Against this backdrop, where: 1) there is no evidence to suggest that the defendant's certifications or its representations at oral argument were or are inaccurate; 2) the defendant has offered plausible explanations for why some of the requested information might not exist; and 3) counsel has provided certification acknowledging its awareness of its obligation to make a truthful declaration and the risk of making a false one, the Court has no basis to discredit the defendant's representations that it has produced all responsive non-privileged material and exercised good faith in withholding any information on the ground of privilege or protection.

**III.     DID THE DEFENDANT WAIVE ANY PRIVILEGE BY SHARING DOCUMENTS WITH THIRD PARTIES?**

The plaintiff contends that the defendant has improperly claimed privilege and work product protection for certain communications between the defendant's in-house counsel and counsel for third parties. (Dkt. No. 66.) These documents fall into two categories.

The first category is documents related to an amicus brief filed by the Life Insurance Association of Massachusetts (the Association). The defendant contends that there was a confidentiality agreement in

5

place covering discussions between its counsel and the Association's counsel regarding the amicus brief, and that such discussions are therefore privileged. (Dkt. No. 77.) Case law discussing the privilege status of communications made between trade association members and the association's attorney is somewhat spare but those courts that have addressed the issue appear to take a case-by-case approach and focus on the substance of the communications at issue and whether they were made with the expectation of confidentiality. *See, e.g., Harper-Wyman Co. v. Connecticut General Life Ins. Co.*, No. 86 C 9595, 1991 WL 62510, *5 (N.D. Ill. Apr. 17, 1991)(noting that confidential communications between trade association attorney and members regarding legal advice may be privileged, but finding no privilege where communications concerned lobbying efforts and were broadly distributed); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 116 (D.D.C. 2010)(ordering in camera review of communications between trade association attorney and members to confirm that documents "relate directly to the work of the [trade association] committee"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 1:09-cv-07666, 2013 WL 791432 (N.D. Ill. March 4, 2013)(explaining that privilege determination for communications between trade association and its members requires a "case-by-case assessment," and finding no privilege where communications were business-related).

Here, in light of the information on the defendant's privilege log, the fact that the defendant has limited its privilege claim to documents discussing a brief filed in litigation, and the confidentiality agreement between the defendant and the Association, it is apparent that the communications between the defendant's and the Association's respective counsel related to a legal matter and were made with an expectation of confidentiality. Accordingly, the communications did not effect a waiver of any privilege or protection.

The second category is the defendant's in-house attorney's notes reflecting his thoughts and impressions about a meeting he had with an attorney for another insurer. (Dkt. No. 77.) In that regard, the plaintiff's waiver argument appears to be based on the premise that the in-house attorney, in addition to speaking with a third party, shared his notes with the third party. However, although the notes relate to a meeting with a third party, there is no evidence to suggest that the notes themselves were shared with

6

any third party. The defendant's privilege log adequately substantiates its privilege claim as to these documents.

## IV. SHOULD THE COURT APPOINT A SPECIAL MASTER?

The plaintiff argues that, to the extent that it would be unduly burdensome for the Court to do a document-by-document in-camera review, a special master should be appointed at the defendant's expense. Federal Rule of Civil Procedure 53 provides in relevant part that, "[u]nless a statute provides otherwise, a court may appoint a master only to . . . address pretrial and post trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(1). Since the Court is able to resolve this motion itself, there is no basis to appoint a special master. The plaintiff's request therefore is denied.

## V. CONCLUSION

The defendant's privilege log and the evidence submitted in connection with this motion substantiate the defendant's privilege claims with respect to the documents at issue in this motion. The plaintiff's Motion to Compel Production of Non-Privileged Discovery accordingly is DENIED. (Dkt. No. 65.) The Court will schedule a status conference to set deadlines for the completion of discovery in light of this ruling.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: June 22, 2015