UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KAREN L. BACCHI,

              Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

              Defendant.

No. 12-cv-11280-DJC

**ORDER ON DEFENDANT'S MOTION TO STRIKE EXPERT REPORTS (#161)**

March 23, 2016

CABELL, U.S.M.J.

      Massachusetts law limits the "surplus" funds that a mutual life insurance company may retain from its "participating business" to "an amount not in excess of twelve percent of its reserve for such business . . . and a margin of the market value of its securities over their book value . . . ."  M.G.L. c. 175, § 141.  The amount that a mutual life insurance company is permitted to retain is referred to as a "safety fund."  *Id*.  The plaintiff, Karen Bacchi, alleges that the defendant, Massachusetts Mutual Life Insurance Company, manipulated its safety fund calculation in order to improperly retain funds that it otherwise would have been obligated to distribute to policyholders, and a key issue is whether the defendant's safety fund calculations comply with M.G.L. c. 175, § 141.  Pending before the Court is the defendant's motion to strike substantial portions of the reports of the plaintiff's three experts.  For the reasons explained below, the motion is granted in part and denied in part.

I.      **Background**

A. <u>**The Defendant's Motion**</u>

The defendant has moved to strike portions of three of the plaintiff's expert reports, on the grounds that the reports improperly contain: 1) legal analysis of the statute at issue in this litigation, M.G.L. c. 175, § 141; 2) opinions regarding the state of mind of the legislators who drafted M.G.L c. 175, § 141; and 3) opinions regarding the defendant's state of mind and intentions. (Dkt. No. 161). The defendant argues that its motion to strike should be granted now to prevent the parties from having to expend resources to take written discovery and depose experts regarding opinions that will ultimately be inadmissible. (*Id*.)

The plaintiff acknowledges that any expert testimony it might seek to use at trial or at summary judgment must be admissible, and must also comply with the pertinent Federal Rules of Evidence. She argues that it is premature to strike any expert opinion now, however, because she has not yet attempted to offer any portion of the reports for consideration by the Court or a jury. (Dkt. No. 165). She argues further that the motion fails on the merits because: 1) case law limiting expert testimony is concerned with preventing jury confusion and jury confusion is not an issue in this case because most of the evidence would never be submitted to the jury; 2) the expert reports explain industry "custom and practice" and do not invade the province of the court as the expert on the law; 3) opinion regarding the history of a statute is appropriate because historian testimony in general is admissible where relevant; and 4) the experts do not actually offer an opinion regarding anyone else's state of mind. (*Id*.)

B. __The Expert Reports__

1. Professor Tom Baker

Professor Tom Baker is a law school professor, and an expert on the history of insurance regulation. His expert report discusses the legislative history of M.G.L. c. 175, § 141 and includes, among other things, his opinions on the purpose of and legislative intent underlying the law, and his opinion that the defendant "improperly manipulate[d] and inflate[d] its safety fund calculation . . . [in a manner that] conflicts with the historical purpose of and practices regarding safety funds in Massachusetts." (Dkt. No. 162-1).

2. James W. Lovely

Mr. Lovely is an attorney and an expert on the financial and securities markets, including derivative contracts in particular. His expert report discusses: 1) the characteristics of the defendant's interest rate and currency derivatives; 2) whether these types of derivatives are considered securities in the financial services industry and under state and federal law; and 3) whether the defendant violated M.G.L. c. 175, § 141 by including interest rate and currency derivatives in its Margin of Market Value calculation. (Dkt. No. 162-2).

3. R. Larry Johnson

Mr. Johnson is a certified public accountant with experience applying Generally Accepted Accounting Principles and statutory accounting principles to the financial statements and financial reports of insurance companies. His expert report calculates the defendant's "appropriate" safety fund assuming that the plaintiff's interpretation of M.G.L. c. 175, § 141 is correct. Although it is offered as context for Mr. Johnson's calculations, the report contains both a summary of the plaintiff's interpretation of M.G.L. c. 175, § 141, and an explanation as to how the defendant's calculations contravened the statute. (Dkt. No. 162-3).

## II.   LEGAL STANDARD

Federal Rule of Evidence 702, which governs the testimony of expert witnesses,

provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge ***will help the trier of fact*** to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).  As stated in Rule 702, the purpose of expert testimony is to

assist the trier of fact to understand the evidence and make its factual determinations.  *Nieves-*

*Villaneuva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) (expert testimony must be

"helpful to the jury").  The Court, in its role as gatekeeper, must therefore ensure that expert

opinion is relevant to the issues in the case and has the proper foundation.  *See Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (Rule 702's requirement that

expert testimony "help the trier of fact" is concerned primarily with relevance); *Bogosian v.*

*Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997) (testimony is helpful to trier of

facts where it is relevant and "rests on a reliable foundation").  Whether the expert testimony will

be offered at trial or at summary judgment, the standard is the same.  "[O]nly evidence that

would be admissible at trial may be considered by the court on summary judgment." *Inner-Tite*

*Corp. v. DeWalch Tech., Inc.*, No. 04-40219-FDS, 2007 WL 2507737, at *3 (D. Mass. Aug. 31,

2007) (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49–51 (1st Cir. 1990)); *see also* FED. R.

CIV. P. 56(c) (affidavits or declarations may be offered at summary judgment only if they set

forth facts admissible in evidence).

The burden is on the plaintiff as the proponent of the expert opinion at issue here to prove that it is admissible. *Bartlett v. Mut. Pharm. Co.*, 742 F. Supp. 2d 182, 187 (D.N.H. 2010).

**A.   Expert Opinion Regarding Statutory Construction**

The defendant argues that the plaintiff's expert reports improperly include opinion regarding the proper interpretation of M.G.L c. 175, § 141, the statute at issue in this case. "It is black-letter law that it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Nieves-Villanueva*, 133 F.3d at 99 (holding that district court "egregious[ly]" erred in admitting expert testimony that employment-discrimination plaintiffs had been hired in violation of Puerto Rico law, but finding error harmless where judge instructed jury that they must follow the law as stated by the judge). Accordingly, "[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper." *Bartlett*, 742 F. Supp. 2d at 188 (citing *United States v. Mikutowicz*, 365 F.2d 65, 73 (1st Cir. 2004)); *see also United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming exclusion of expert testimony about meaning of statutes and regulations because "[t]he only legal expert in a federal courtroom is the judge"). Expert opinion regarding what the law is or how it applies to the facts of the case may be stricken. *Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199, 205 n.4 (D. Mass. 2012) (granting motion to strike expert declaration to the extent that it consisted of legal arguments and legal conclusions); *Bartlett*, 742 F. Supp. 2d at 188 (excluding expert testimony on FDA policies and procedures related to generic drug labeling in products liability suit alleging improper warning label on generic drug).

But, an expert may properly testify regarding industry custom and practice. And "where someone who is an expert in a particular field would be expected to understand the ways in which the laws affect the business," it is okay if the expert's opinion as to industry custom and

practice incorporates his understanding of the law.  *Suter v. Gen. Accident Ins. Co. of Am.*, 424 F. Supp. 2d 781, 792-93 (D.N.J. 2006) (former insurance company employee may testify to his opinion that reinsurers generally reimburse the insurance company they cover where the insurance company has settled claim in good faith even though opinion is based, in part, on understanding of relevant law).  The expert's testimony must be limited to industry practice; the expert cannot testify as to what the law requires.  *Bartlett*, 742 F. Supp. 2d at 189 (expert may testify regarding industry practice in product liability case because industry practice is relevant to whether defendant acted with due care, but may not testify regarding FDA policy where that policy deals with the very laws that are at issue in the case).

### B.  Expert Opinion Regarding Legislative Intent

The defendant argues that the plaintiff has also improperly offered expert opinion regarding the legislative history of M.G.L c. 175, § 141.  To the extent that opinion on legislative history is offered to explain the proper interpretation of M.G.L c. 175, § 141, such opinion is improper because it invades the province of the Court as discussed in part II.A, above.  *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1507 n.6 (9th Cir. 1994) (stating that "interpretation of legislative history [is] unequivocally [a] question for the court").  The cases that the plaintiff cites regarding historian testimony do not hold otherwise.  The plaintiff primarily relies on *United States v. Kantengwa*, 781 F.3d 545 (1st Cir. 2015), a case discussing the admissibility of historian testimony about the placement and timing of roadblocks during the Rwandan genocide. *Kantengwa* stands for the proposition that historian testimony may sometimes be offered to help the jury resolve issues of fact.  In the Court's view, *Kantengwa* is of little instructive value here because it contains no analysis regarding the propriety of expert testimony regarding the legislative history, and by extrapolation, the intent, of a statute.  Similarly, none of the other

cases cited by the plaintiff stands for the proposition that a party can offer expert testimony on the legislative history of the statute that formed the basis of liability in the case. *See, e.g., Flanagan v. Altria Group, Inc.*, 423 F. Supp. 2d 697, 700 (E.D. Mich. 2005) (admitting expert testimony regarding the history of tobacco regulation where there was no objection to the evidence --and thus no discussion regarding its appropriateness *vel non*-- on the basis that it impermissibly infringed on the judge's role of determining what the law is); *United States v. Fumo*, 655 F.3d 288 (3d Cir. 2011) (allowing expert testimony about ethics rules when offered to show defendant's awareness of the rules and intent to defraud where defendant claimed to be compliant); *Cooper v. Pac. Life Ins. Co.*, Civ. A. No. CV203-131, 2007 WL 430730 (S.D. Ga. Feb. 6, 2007) (allowing expert testimony as to the "practices normally followed by insurance companies regulated by the securities law, but [the testimony] cannot purport to instruct the jury on the legal requirements of the statutes and regulations"); *Suter v. Gen. Accident Ins. Co. of Am.*, 424 F. Supp. 2d 781 (D.N.J. 2006) (allowing expert testimony that did "not reach what the law requires, but rather, touches upon what a person familiar with the custom of the insurance industry would believe to be the impact of the law upon the business").

### C.  Expert Opinion Regarding The Defendant's State of Mind

Finally, the defendant argues that the plaintiff's experts have improperly testified as to the defendant's intent in adopting the calculation methods it uses to determine its safety fund. Expert testimony that the defendant acted with the intent to violate M.G.L c. 175, § 141 is clearly improper. *United States ex rel. Dyer v. Raytheon Corp.*, No. 08-10341-DPW, 2013 WL 5348571, *13 (D. Mass. Sept. 23, 2013) (excluding expert testimony that defendant "knowingly misrepresented results" because no expert is qualified to testify as to another's state of mind). As another judge in this district explained, "[a]n expert witness may not testify as to another

person's intent.  No level of experience or expertise will make an expert witness a mind-reader."

*Holmes Grp., Inc. v. RPS Products, Inc.*, No. CIV.A. 03-40146-FDS, 2010 WL 7867756, at *5

(D. Mass. June 25, 2010).

### III.   ANALYSIS

Applying the foregoing principles to the three expert reports at issue, some portions of

the reports are categorically improper whether offered at summary judgment or trial and

therefore properly can and should be stricken now.  Specifically, the Court will strike those

portions of the expert reports that contain legal analysis or speculation about the defendant's

state of mind.  This material is outside the permissible scope of expert opinion.  Notwithstanding

the plaintiff's argument that it would be premature to strike any portion of the reports at this

juncture, the Court finds that it best promotes the interests of efficient case resolution to strike

this opinion now rather than requiring the parties to conduct discovery on material that cannot be

admitted as expert testimony in any circumstance.

Nonetheless, the Court agrees with the plaintiff that it would be premature to strike those

portions of the expert reports that contain information that may be admissible, such as

descriptions of industry custom and practice, or opinion testimony that might help a court or jury

understand the evidence, such as an explanation of the characteristics of certain types of

derivatives.  Because the admissibility of this information depends upon the context in which it is

offered, the Court will not be in a position to determine its propriety until the information is

actually proffered by the plaintiff in the form of expert testimony.  With these considerations in

mind, the Court rules as follows with respect to the three reports.

### A.  The Baker Report

Professor Baker's report is devoted entirely to discussing the legislative history of

M.G.L. c. 175, § 141, and concludes that the defendant intentionally violated the statute.  That is

not a proper role for expert opinion and the report is therefore stricken.  The plaintiff remains

free to offer her own view of the history and construction of M.G.L. c. 175, § 141 in her motion

for summary judgment, proposed jury instructions or another properly filed legal brief.

### B.  The Lovely Report

The Court finds that Mr. Lovely's report contains legal analysis and argument to the

extent he discusses the treatment of interest rate and currency derivatives under federal and state

securities law, and concludes that the defendant violated M.G.L. c. 175, § 141.  This is improper

testimony and the Court accordingly strikes those portions of Mr. Lovely's report which contain

legal analysis and conclusions, including specifically sections IV.B, IV.C, IV.D and V.

However, the report also contains discussion regarding the characteristics of certain derivatives,

and the industry practice of categorizing such derivatives as something other than securities.

Depending on the context in which this latter opinion testimony is offered it may be admissible.

The motion to strike these other sections at this juncture is therefore denied.

### C.  The Johnson Report

Mr. Johnson's report analyzes the defendant's safety fund calculation under statutory

accounting principles.  The application of accounting principles to the facts of this case is outside

the knowledge of a lay jury and therefore an appropriate area for expert testimony.  In addition,

the report contains a summary of the plaintiff's interpretation of M.G.L. c. 175, § 141, and

purports to explain how, assuming the plaintiff's interpretation is correct, the defendant's

calculations allegedly violated the statute.  The propriety of this opinion testimony is a closer

call, particularly where the report in some respects appears to endorse the plaintiff's interpretation of section 141 as much as it purports to simply assume its correctness for purposes of explaining why the defendant's calculation was incorrect.  For example, Johnson opines that MassMutual's reserve calculation is "not only at variance with the provisions of the statute, but is also at variance with [Johnson's] understanding of the intention of the statute," and states that "the safety fund law does not contemplate [BA assets]," which cannot be included in MVM. (Dkt. No. 162-3).  Thus, if at the time this opinion were offered the Court were persuaded it was being offered solely to support the plaintiff's theory of the correct interpretation of section 141, it would be improper.  But, if the Court were to conclude that the plaintiff's interpretation of section 141 is correct with respect to how the safety fund should be calculated, the Johnson Report arguably could then assist the Court and/or jury in determining what the proper amount of the safety fund should have been for each relevant year.  Because that is a determination that has yet to be made, the Court cannot at this juncture conclude that any portion of Mr. Johnson's report is wholly inadmissible, and therefore will not strike any portion of the report at this time.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's motion is GRANTED in part.  The Court strikes the Baker report in its entirety, and strikes sections IV.B, IV.C, IV.D and V of the Lovely report.  The remainder of the motion to strike is otherwise DENIED.


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  March 23, 2016