IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| KAREN L. BACCHI, Individually and on Behalf of all Persons Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 12-cv-11280-DJC |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARD**

Dated: June 19, 2017

Jason B. Adkins, BBO #558560
John Peter Zavez, BBO #555721
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, 5th Floor
Boston, MA  02114
Phone (617) 367-1040
Fax (617) 742-8280

Andrew S. Friedman (admitted pro hac vice)
Francis J. Balint, Jr., BBO #680602
BONNETT, FAIRBOURN, FRIEDMAN &
    BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ  85016
Phone: (602) 274-1100
Fax: (602) 274-1199

Mark A. Chavez (admitted pro hac vice)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA  94941
Phone: (415) 381-5599
Fax: (415) 381-5572

Attorneys for Plaintiff

## TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

BACKGROUND ........................................................................................................2

    A.    Class Counsel's Vigorous and Persistent Prosecution of the Class Claim. ............2

    B.    Settlement Benefits Achieved by Class Counsel. ....................................................5

ARGUMENT ...............................................................................................................5

    I.    AN AWARD OF FEES BASED ON THE PERCENTAGE
        METHOD IS APPROPRIATE AND WARRANTED IN THIS CASE ................5

        A.    Class Counsel Are Entitled to an Award of Fees under
            the Common Fund Doctrine.........................................................................5

        B.    The Percentage Method Is the Preferred Means of Calculating
            a Reasonable Common Fund Fee Award.....................................................6

        C.    Class Counsel Request Only a "Benchmark" 25% Fee Award ..................7

        D.    All of the Factors Used by Courts in this Circuit to Determine
            the Fairness of a Common Fund Award Strongly Support a
            Finding That the Requested Benchmark Fee of 25 percent
            of the Common Fund is Reasonable ...........................................................8

            1.    The Size of the Fund and the Number of Persons Benefitted...............8

            2.    The Skills, Experience, and Efficiency of the Attorneys Involved........9

            3.    The Complexity and Duration of the Litigation .................................11

            4.    The Risks of the Litigation .................................................................12

            5.    The Amount of Time Devoted to the Case by Class Counsel .............14

            6.    Awards in Similar Cases.....................................................................15

            7.    Public Policy Considerations ..............................................................16

            8.    The Endorsement of Plaintiff and Reaction of the Settlement Class...16

E.      The Reasonableness of Class Counsel's Fee Request Is
        Confirmed by a Lodestar Cross-Check.......................................................17

II.     CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT
        OF THEIR LITIGATION EXPENSES .................................................................18

III.    THE COURT SHOULD APPROVE A $3,000 INCENTIVE
        AWARD TO PLAINTIFF ....................................................................................19

**CONCLUSION** ...................................................................................................................20

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................................15

*Bennett v. Roark Capital Grp., Inc.*,
    No. 2:09-cv-00421-GZS, 2011 WL 1703447 (D. Me. May 4, 2011)...............................11

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ........................................................................ *passim*

*Bilewicz v. FMR LLC*,
    Civ. A. Nos. 13-10636 & 14-10035-DJC, 2014 WL 8332137
    (D. Mass. Oct. 16, 2014)........................................................................................2, 6, 18

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).........................................................................................................5

*Boyajian v. California Prods. Corp.*,
    No. 10–CV–11849–rwz, 2013 WL 3828804 (D. Mass. July 9, 2013) .............................15

*Bussie v. Allmerica Fin. Corp.*,
    No. Civ. A-97–40204–NMG, 1999 WL 342042 (D. Mass. May 19, 1999).......................1

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .......................................................................................6

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................................16

*Grace v. Ludwig*,
    484 F.2d 1262 (2d Cir. 1973)........................................................................................16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................................9

*Hill v. State St. Corp.*,
    Civ. A. No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .................. *passim*

*Hochstadt v. Boston Scientific Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ..............................................................................12

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
  MDL No. 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .........................14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003);......................................................................17

*In re Computron Software, Inc.*,
  6 F. Supp. 2d 313 (D.N.J. 1998) ...................................................................10

*In re Fidelity/Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999).......................................................................18

*In re Lupron Mktg. & Sales Practices Litig.*,
  No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833 ......................................8, 11, 17

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  982 F.2d 603 (1st Cir. 1992).........................................................................5

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014) ...........................................................7, 16

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
  3:10-cv-30163-MAP, 2014 WL 6968424 (D. Mass. Dec. 9, 2014) ...........................8, 19

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011)...............................................................8, 9

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005).............................................................. *passim*

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)......................................................................5, 6, 7

*In re TJX Companies Retail Sec. Breach Litig.*,
  584 F. Supp. 2d 395 (D. Mass. 2008) ..............................................................8

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007).................................................................17

*In re Viropharma Inc. Sec. Litig.*,
  Civ. A. No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ....................................10

*Kingsborough v. Sprint Commc'ns Co., L.P.*,
  Civ. A. No. 14–12049–NMG, 2015 WL 1605506 (D. Mass. Apr. 8, 2015) ......................9

*Latorraca v. Centennial Techs., Inc.*,
    834 F. Supp. 2d 25 (D. Mass. 2011) ...........................................................................7, 15

*Manley v. Midan Rest. Inc.*,
    No. 14 CIV. 1693 (HBP), 2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ........................10

*Mazola v. May Dep't Stores Co.*,
    No. 97CV10872-NG, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) ...................................7

*Medoff v. CVS Caremark Corp.*,
    No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ...........................................8

*Reading Coop. Bank v. Suffolk Constr. Co.*,
    464 Mass. 543 (2013) ......................................................................................................13

*Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds*,
    382 Mass. 580 (1981) ......................................................................................................13

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .............................9

*Savani v. URS Prof'l Solutions LLC*,
    121 F. Supp. 3d 564 (D.S.C. 2015) .................................................................................19

*Scovil v. FedEx Ground Package Sys., Inc.*,
    No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ........................15, 19

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ............................................................................................6

*Sylvester v. CIGNA Corp.*,
    401 F. Supp. 2d 147 (D. Me. 2005) .................................................................................11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .........................................................................................17

*Wallace v. Powell*,
    301 F.R.D. 144 (M.D. Pa. 2014)......................................................................................10

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693(PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013).............................18

**<u>Other</u>**

Fed. R. Civ. P. 23(h) ............................................................................................1

M.G.L. c. 175, § 140 ....................................................................................2, 3, 11

M.G.L. c. 175, § 141 ....................................................................................2, 3, 11

*Manual for Complex Litigation* (Fourth) § 14.122 (2004) ...........................................17

## INTRODUCTION

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Pursuant to this Court's Preliminary Approval Order,[1] counsel for Plaintiff Karen L. Bacchi and the Settlement Class ("Class Counsel") respectfully submits this memorandum in support of Plaintiff's motion seeking Court approval of (a) a common fund award of attorneys' fees and litigation expenses to Class Counsel, and (b) an incentive award to Plaintiff in recognition of her service as the sole Class Representative.

Class Counsel's efforts over nearly five years of litigation have been without compensation of any sort, and their entitlement to fees and expenses has been wholly contingent upon a favorable resolution of the alleged Class claims. *See Declaration of Jason B. Adkins in Support of Plaintiff's Motion for Approval of Attorneys' Fees, Reimbursement of Expenses and Incentive Award for the Class Representative* ("Adkins Decl."), attached hereto as Exhibit 1 at ¶¶ 6, 38. In consideration of the $37.5 million common fund achieved in this litigation, and in light of the arduous, complex and risky nature of this litigation, Class Counsel respectfully requests Court approval of 25 percent of the common fund – $9,375,000 – in attorneys' fees plus $1,533,575.85 in unreimbursed litigation expenses incurred in successfully prosecuting and settling this action.

The percentage of the fund method, whereby the award is based on a percentage of the common fund conferred on the class by the settlement, is the preferred way to award attorneys' fees in a common fund action like this one. *Bussie v. Allmerica Fin. Corp.*, No. Civ. A-97–40204– NMG, 1999 WL 342042, at *1-2 (D. Mass. May 19, 1999). From a public policy standpoint, the percentage method of calculating fees (a) more appropriately aligns the interests of the class with those of class counsel (the larger the value of the settlement, the larger the value of the fee award), and (b) encourages efficiency and avoids disincentives to settle cases early created by lodestar

---

[1] *See Order Preliminarily Approving Class Action Settlement, Conditionally Certifying Class for Settlement Purposes, Appointing Class Representative, Appointing Class Counsel, Approving Procedure and form of Notice, and Scheduling Final Approval Hearing* ("Preliminary Approval Order") [ECF 240 at ¶ 6].

method. *Id.* at *2 (citations omitted); *see, e.g., Bilewicz v. FMR LLC*, Civ. A. Nos. 13-10636 & 14-10035-DJC, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014) (Casper, J.) (awarding class counsel 33.3% of common fund based on percentage method). The requested percentage is set at the 25% "benchmark" percentage recognized within the First Circuit, and is thus squarely within the range of fee awards approved in this and other Circuits.

Moreover, as shown below, ***all*** the factors that courts use to assess the reasonableness of a fee application support approval of the requested fee as fair and reasonable given the risks and recovery in this action. The requested benchmark fee award is particularly appropriate here given the unique and significant risks that Class Counsel faced in establishing liability and class certification, especially against a resourceful and sophisticated defendant represented by highly experienced defense counsel.   Nevertheless, due solely to Class Counsel's skill and persistence, the Class Members will receive tens of millions of dollars in payments and other benefits that Defendant MassMutual Life Insurance Company ("MassMutual") would not have provided absent Class Counsel's efforts.   Finally, the reasonableness of the 25% request is confirmed by a lodestar cross-check, which given the magnitude of Class Counsel's efforts yields an extremely modest lodestar multiplier of only 1.31. Adkins Decl. at ¶ 30.

Finally, given her years of service on behalf of the Class in bringing and overseeing the prosecution of this action, Class Counsel also requests Court approval of an incentive award to Plaintiff of $3,000.   As shown below, such an award is squarely within the range of awards approved by courts in this Circuit and nationwide.

## BACKGROUND

### A.   Class Counsel's Vigorous and Persistent Prosecution of the Class Claim.

After over a year of research and investigation, Plaintiff filed this action in July 2012 contending that the Massachusetts "Safety Fund" law, M.G.L. c. 175, §§ 140 & 141, establishes a statutory percentage limit on the maximum amount of surplus a Massachusetts-domiciled life insurance company may withhold from its participating policyholders and that MassMutual exceeded the Safety Fund limit in each year during the Class Period (January 1, 2001 to December

31, 2016) (the "Action").  *See* Adkins Decl. at ¶¶ 2, 16.  The Parties had significantly divergent interpretations of the Safety Fund law and of the significance and interpretation of MassMutual's financial reporting and accounting practices, which differences were manifested in highly contested discovery disputes and dispositive motions. *Id.* ¶¶ 20, 24.  The litigation was hard fought for nearly five years, including highly contentious motions such as Defendant's motion to dismiss, various discovery motions and summary judgment.  *Id.* ¶¶ 3, 15-26.

Extensive fact discovery in this case began in 2013 and concluded on October 15, 2015. In response to Plaintiff's discovery requests, MassMutual produced (and Class Counsel reviewed) over 145,000 pages of documents, including a myriad of complex and data-filled spreadsheets. Adkins Decl. at ¶¶ 3, 17.   Class Counsel had to devote extensive time to deciphering the spreadsheet data, then analyzing it and testing it with the help of experts and consultants as to their claims and MassMutual's defenses. *Id.* Plaintiff further served subpoenas on accounting firms that served as Defendant's auditors and business consultants during the class period, which accounting firms produced an additional 26,309 pages of documents for review.  *Id.* ¶¶ 3, 18. Plaintiff also responded to Defendant's document requests and interrogatories.  *Id.* Class Counsel meanwhile filed public records requests in multiple states seeking relevant information, including source information that separately identified the financials for MassMutual's participating versus its non-participating business, which distinction is highly material to the Safety Fund calculation applicable to MassMutual's participating business lines. *Id.*

Numerous disputes arose during the discovery process, necessitating substantial work on the part of Class Counsel, including, without limitation: extensive discovery-related correspondence and lengthy deficiency letters, multiple meet and confer sessions to negotiate disputed discovery issues and motions to compel the production of improperly withheld documents. Adkins Decl. at ¶ 20. Class Counsel also drafted, filed and litigated numerous discovery motions.  *Id.*  Moreover, since MassMutual provided minimal amounts of archival material relating to the history and adoption of M.G.L. c. 175, §§ 140 and 141 and historic accounting practices and annual statements, Class Counsel performed substantial and wide-

reaching research in public, university, legislative and specialized libraries and in other public archives to locate information regarding the meaning of the various contested terms in Sections 140 and 141 (and the predecessor statutes dating back to 1887) and interpretation of statutory accounting terms at the time the Safety Fund law was adopted, and readopted in 1907. *Id.* ¶ 21.

Class Counsel also deposed ten (10) MassMutual fact witnesses, including accountants, actuaries, senior officers and MassMutual's in-house lobbyist and attorney. Adkins Decl. at ¶ 22. The depositions of these fact witnesses involved complex issues of statutory accounting, financial reporting, reserves and investments. *Id.* Class Counsel also conducted three Rule 30(b)(6) depositions. *Id.* These depositions generated nearly a thousand pages of transcripts and 59 exhibits (totaling 788 pages) of internal safety fund calculations, meeting minutes, insurance product analyses, financial and accounting records, annual statements and their supplements, highly complex multipage spreadsheets containing data for fifteen or more years of MassMutual's operations, and evolving accounting standards to name a few areas of inquiry. *Id.* Class Counsel, in addition, defended Plaintiff's deposition. *Id.*

Following the close of fact discovery, the Parties exchanged detailed initial and rebuttal expert disclosure reports. Adkins Decl. at ¶ 19. All told, Plaintiff served disclosures and reports (as well as rebuttal reports) for five (5) experts and MassMutual served disclosures and reports (and rebuttal reports) for six (6) experts. *Id.* The Parties conducted depositions of their primary respective experts, addressing esoteric issues of insurance finance and accounting. *Id.*

Following fact and expert discovery, the parties briefed and argued MassMutual's motion for summary judgment, which extensive briefing included Plaintiff's sur-reply. Adkins Decl. at ¶ 24. Before commencing settlement negotiations, the Parties completed briefing and presented oral argument on MassMutual's motion for summary judgment. *Id.* ¶¶ 24-25. Subject to the Court's ruling on MassMutual's summary judgment motion, trial in this Action was set to commence on February 6, 2017. [ECF 178]. *Id.*

Thus armed with a thorough understanding of the strengths and weaknesses of the respective claims and defenses, and only <u>after</u> fact and expert discovery was completed, the Parties

engaged in arms'-length negotiations and a mediation through their respective counsel.  Adkins

Decl. at ¶¶ 25-26. The Parties conducted a mediation on December 5, 2016 before Professor Eric

D. Green, from Resolutions, LLC, in Boston, Massachusetts.  *Id.* ¶ 25.  Through this mediation

process, the Parties were able to achieve a compromise resolution of all class claims.

>    **B.    Settlement Benefits Achieved by Class Counsel.**

The Settlement Agreement reached through mediation provides for a common fund of

$37.5 million. Stipulation and Agreement of Compromise, Settlement and Release of Action [ECF

235] ("Stipulation"), at §II; Adkins Decl. at ¶¶ 5, 13.  In addition, MassMutual has agreed to pay

all costs of class notice and settlement administration, an expense reasonably estimated to exceed

$3 million, which would otherwise be borne by the Settlement Class. *Id.*  Finally, MassMutual

agreed to mandatory injunctive relief, requiring it to continue for at least ten years to provide

voluntary annual Safety Fund calculations to the Massachusetts Division of Insurance. *Id.* ¶ 5.

## ARGUMENT

>    **I.    AN AWARD OF FEES BASED ON THE PERCENTAGE METHOD IS APPROPRIATE AND WARRANTED IN THIS CASE.**

>    **A.    Class Counsel Are Entitled to an Award of Fees under the Common Fund Doctrine.**

"In its paradigmatic formulation, the common fund doctrine permits . . . a person preserving

or recovering a fund for the benefit of others in addition to himself, to recover his costs, including

counsel fees, from the fund itself, or alternatively, from the other beneficiaries." *In re Nineteen*

*Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992)

(citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also, In re Thirteen Appeals*

*Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995) ("The

common fund doctrine is founded on the equitable principle that those who have profited from

litigation should share its costs."). Here, the $37.5 million settlement benefit for the Class

established by the Settlement Agreement is plainly a common fund, essentially reflecting

MassMutual's agreement to pay a dividend to Settlement Class Members in that amount, less

Court-approved fees, expenses and service award. Stipulation, at § II, at 4.[2]

**B.     The Percentage Method Is the Preferred Means of Calculating a Reasonable Common Fund Fee Award.**

The preferred method of awarding attorneys' fees in a common fund case is through the "percentage of fund (POF) method." *In re Thirteen Appeals*, 56 F.3d at 306-08 ("use of the POF method in common fund cases is the prevailing praxis," in light of the "distinct advantages that the POF method can bring to bear in such cases"). "In complex litigation – and common fund cases, by and large, tend to be complex – the POF approach is often less burdensome to administer than the lodestar method." *In re Thirteen Appeals*, 56 F.3d at 307 (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-70 (D.C. Cir. 1993)). Rather than reviewing voluminous time records, "the POF method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." *Id*. (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

This Court and other courts in the First Circuit have generally recognized that attorneys' fees should be calculated based on the percentage of the fund method where counsel's efforts have generated a common fund. *See, e.g., Bilewicz*, 2014 WL 8332137, at *6. In *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (Young, J.), for example, this Court found that the percentage of the fund method was the most appropriate way to calculate attorneys' fees, notwithstanding a class objector's argument that the lodestar method should be applied. 231 F.R.D. at 77-79. In so holding, this Court recognized that the percentage of the fund method remains the "prevailing praxis," and that, "[c]ontrary to popular belief it is the lodestar method, not the [percentage of fund] method, that breaks from precedent." *Id*. at 77-78 (quoting *In re Thirteen Appeals*, 56 F.3d at 305); *see also Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349-350 (D. Mass. 2015) (same), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, none of the common fund will revert to MassMutual under any circumstances; the

---

[2] Because the vast majority of participating policyholders receive their dividends in the form of paid-up additions, the common fund is administratively distributed to eligible in-force Policyholders in that fashion. Stipulation, at § X(A); Adkins Decl. at ¶ 14.

Class will receive 100 percent of the common fund net of attorneys' fees, expenses and service award. Adkins Decl. at ¶ 13. Because this is not a claims-made settlement, the amount of the common fund that is not received by the Class will be *de minimis* (*i.e.*, consisting only of uncashed checks that are mailed to Class Members), and will be applied to a *cy pres* award. Stipulation at § X(C).[3]

### C.   Class Counsel Request Only a "Benchmark" 25% Fee Award.

Under the percentage of fund method, "the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen Appeals*, 56 F.3d at 305. Class Counsel here respectfully request approval of a fee of 25% of the $37.5 million common fund created by their efforts, without including the value of the class notice and settlement administration expenses that MassMutual has agreed to pay as an additional benefit of the Settlement Agreement. Adkins Decl. at ¶ 6. The request for $9,375,000 in fees is no more or less than the recognized "benchmark," squarely within the range of approved common fund fee awards. *See Bezdek*, 79 F. Supp. 3d at 349-50 ("[w]ithin the First Circuit, courts generally award fees in the range of 20–30%, with 25% as the benchmark" (quotations omitted) (quoting *Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25, 27–28 (D. Mass. 2011)); *Mazola v. May Dep't Stores Co.*, No. 97CV10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."); *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see,*

---

[3] Even the *de minimis cy pres* award will benefit the Class, because the *cy pres* designees, Hampden County Bar Association Legal Clinic, the Consumer Federation of America, Just The Beginning – A Pipeline Organization and Veterans Legal Services, are organizations that provide a public benefit, including in the area of consumer protection.  Stipulation at § X(C). These organizations indirectly benefit Class Members, since they will provide legal and related services to consumers, much like this case sought to do. *See, e.g., In re Relafen*, 231 F.R.D. at 82-83 (approving counsel's fees of 33.3 % of the fund, which included a $500,000 *cy pres* award, and noting that the *cy pres* designee provided a benefit to the class).

*e.g., Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *8-9 (D.R.I. Feb. 17, 2016) (approving POF award of 30% of $48 million common fund, and noting it is not out of proportion with awards in comparable class settlements); *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 3:10-cv-30163-MAP, 2014 WL 6968424, at *6 (D. Mass. Dec. 9, 2014) (approving requested fees of 24.8% of total settlement as reasonable and in line with general range in the First Circuit).

**D.      All of the Factors Used by Courts in this Circuit to Determine the Fairness of a Common Fund Award Strongly Support a Finding That the Requested Benchmark Fee of 25 percent of the Common Fund is Reasonable.**

To confirm the reasonableness of the percentage of the common fund requested by class counsel, courts within this Circuit have considered at least seven factors, including:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Hill v. State St. Corp.*, Civ. A. No. 09-12146-GAO, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *accord, Medoff.*, 2016 WL 632238, at *8 (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)). Courts have also considered the support of the named plaintiffs and the reaction of the class to the settlement. *See Hill*, 2015 WL 127728, at *19-20; *accord, In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of six relevant factors).

As shown below, here ***every pertinent factor*** weighs strongly in favor of a finding that the requested fee award – 25 percent of the common fund – is reasonable.

**1.      The Size of the Fund and the Number of Persons Benefitted.**

Courts in this circuit have recognized that "the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award." *See In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 458

(citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The Settlement is inarguably valuable because it will, if approved, provide members of the Settlement Class with an immediate, tangible financial benefit, while avoiding the risk of receiving nothing.  The size of the common fund – $37.5 million – constitutes a substantial settlement in any context. The Settlement Agreement thus undoubtedly achieves a favorable outcome for the Settlement Class, especially considering the substantial costs, risks, and delay of continued litigation.  *See Declaration of Jason B. Adkins In Support of Plaintiff's Motion for Preliminary Approval* [ECF 238] ("Adkins Preliminary Approval Decl."), at ¶ 11.

As noted, not only has MassMutual agreed to a common fund settlement of $37.5 million for the benefit of the Settlement Class, Stipulation at §II, it has also agreed to pay all costs associated with the provision of class notice and settlement administration.  Stipulation at § X(B)(2).  Because these notice and administration costs would otherwise be borne by the Class, MassMutual's undertaking constitutes an additional benefit to the Class achieved by Class Counsel. *See, e.g., Kingsborough v. Sprint Commc'ns Co., L.P.*, Civ. A. No. 14–12049–NMG, 2015 WL 1605506, at *2 (D. Mass. Apr. 8, 2015) (including administrative costs paid by defendant as part of common fund to which court applied 25% percentage award). In addition, under the proposed Settlement Agreement, MassMutual has agreed to continue for at least ten years to provide voluntary annual Safety Fund calculations to the Massachusetts Division of Insurance. Stipulation at § X(B)(1). Nevertheless, Class Counsel do not seek a percentage fee premised on these additional settlement benefits.

### 2.    The Skills, Experience, and Efficiency of the Attorneys Involved.

In considering the quality of representation, courts in the First Circuit consider, *inter alia*, counsel's competence, reputation, commitment to their clients' interests, and experience in litigating similar matters. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 459 (noting counsel's integrity, ingenuity, experience, reputation and devotion to the interests of their clients); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (highlighting counsel's competence and relevant litigation experience).

These considerations are similar to those assessed by other federal courts in evaluating attorney performance. *In re Viropharma Inc. Sec. Litig.*, Civ. A. No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (measuring counsel's performance by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel") (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 3 323 (D.N.J. 1998)) (internal quotation marks omitted); *Wallace v. Powell*, 301 F.R.D. 144, 165 (M.D. Pa. 2014) (same); *accord Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP), 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) (measuring counsel's quality considering recovery obtained, experience and reputation of lawyers involved, and thoroughness of work).

Here, the quality of representation supports Class Counsel's request. Class Counsel have substantial experience prosecuting large-scale class actions, including, without limitation, insurance and complex litigation. *See* firm resumes for Class Counsel attached as Exhibit A to the Adkins Decl.; Declaration of Andrew S. Friedman ("Friedman Decl."), attached hereto as Exhibit 2, at Exhibit C; Declaration of Mark A. Chavez ("Chavez Decl."), attached hereto as Exhibit 3, at Exhibit A. In fact, the firm of Adkins, Kelston & Zavez, PC had particularized expertise in litigating class claims against another Massachusetts life insurance company under the Massachusetts Safety Fund law. Adkins Decl. at ¶ 11.

Class Counsel deployed their experience in this case which presented a range of challenging substantive and procedural issues as discussed briefly above. Class Counsel's skill and experience, including in the area of complex insurance and accounting matters, were directly responsible for the favorable settlement, and they therefore weigh in favor of granting the requested fees. *See Hill*, 2015 WL 127728, at *17 (recognizing plaintiffs' counsel's "experience and expertise contributed to the achievement of the [s]ettlement"); *Bezdek*, 79 F. Supp. 3d at 350 (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of 25 percent common fund fee).

### 3.     The Complexity and Duration of the Litigation.

With respect to the complexity and duration of the litigation, courts consider the "time and labor required" of counsel, as well as "the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services." *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421-GZS, 2011 WL 1703447, at *1 (D. Me. May 4, 2011) (citing *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005)); *see also In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4 (difficult and novel legal issues and "thorny issues of fact" weighed in favor awarding fees).

As this Court is well-aware, this case presented particularly complicated insurance, accounting and actuarial issues concerning mutual insurance companies and their compliance with the Massachusetts "Safety Fund" law, M.G.L. c. 175, § 140 ("Section 140") & § 141 ("Section 141"). Plaintiff alleged in this case that the Safety Fund law is made contractually enforceable by Section 140 (entitled "Annual dividends on policies of life … insurance"), which specifically requires that the par policyholder's annual right to apportionment and distribution of her share of divisible surplus, as defined by the Safety Fund law, be incorporated into every par policy contract of a Massachusetts-domiciled life insurance company, such as MassMutual. Consistent with Section 140, Plaintiff's policy expressly provides that at the end of each policy year she "be credited with such share of the divisible surplus, if any, as may be apportioned to it by the Company as a dividend."

In her Complaint, Plaintiff alleges that MassMutual exceeded the 12% limit by improperly calculating its Safety Fund, including by double-counting amounts already deducted from its surplus and therefore withheld from par policyholders: once under the required Asset Valuation Reserve ("AVR") and a second time through its computation of the "the margin of the market value of its securities over their book value" ("MVM") under Section 141. [ECF 1 at ¶¶ 10, 19.a & 49]. Plaintiff also alleges MassMutual improperly (a) excluded from surplus its net admitted Deferred Tax Asset and (b) deducted pre-paid pension expenses from surplus between 2001 and 2005. [ECF 1 at ¶¶ 19.b. & 19.c.].  Plaintiff also alleges that MassMutual's surplus notes are

improperly deducted from the Safety Fund surplus. Plaintiff also challenged the expanded definition of "reserves" that MassMutual used in denominator of its Safety Fund calculation, on grounds it improperly included all General Account liabilities and Separate Accounts liabilities.

The foregoing issues required Class Counsel to inquire into and master the complexities of statutory accounting principles (including the historic application of those governing principles dating back to the late 1800s when the predecessor to the Safety Fund law was first adopted by the Legislature), to obtain and review historic texts, legislative history, insurance commissioner reports, and annual statements (and various state supplements thereto) for purposes of statutory interpretation, and esoteric accounting, actuarial and financial information specifically related to MassMutual's annual statements and tax filings, among innumerable other areas concerning life insurance and the law. Adkins Decl. at ¶¶ 21, 34. The complexity of the issue led to the retention of no fewer than eleven expert witnesses by the Parties, all of whom completed expert reports and most of whom were deposed. *Id.* at ¶ 19.

The breadth of Plaintiff's formal and informal discovery over nearly five years is surely sufficient to permit a reliable assessment of each of the Parties' strengths and weaknesses well before settlement negotiations. Adkins Decl. at ¶¶ 16-26. Given the substantial discovery that occurred and the detailed information the Parties used to negotiate the Settlement, the Parties clearly had "sufficient discovery . . . to make an intelligent judgment about settlement." *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Thus, the complexity and difficulty of the issues presented, and the intensity and effort by Class Counsel, demonstrate the reasonableness of the requested fees.

### 4. The Risks of the Litigation.

Where "substantial risks of non-recovery" exist and class counsel "litigated the Action on a fully contingent basis and [are] exposed to the risk that they might obtain no compensation for their efforts on behalf of the class," courts favorably consider "this contingency risk in awarding attorneys' fees." *Hill*, 2015 WL 127728, at *18 ("Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee

award") (citation omitted).

Here, there were numerous risks that could have resulted in Class Counsel receiving nothing for their work, and which could have caused the Class to receive nothing. As outlined above, the dispositive legal question in this case – whether MassMutual's Safety Fund exceeded the Safety Fund limit – involved, *inter alia*, investigating and responding to several substantive defenses raised by MassMutual. These include, without limitation, MassMutual's claim that it in fact calculated its Safety Fund limit in accordance with the statutorily provided two-part formula under Section 141. Specifically, MassMutual argued that its board, in the exercise of its business judgment, decided each year which part of MassMutual's earnings would be paid out as dividends to policyholders, and which part the Company would retain.  MassMutual emphasized that it has reported its Safety Fund calculation each year to the Massachusetts Division of Insurance, which never objected to them.

Beyond this claimed "regulatory blessing," MassMutual argued that Section 141 was not incorporated into Plaintiff's par policy contract, and that she lacked a private right of action to otherwise enforce Section 141. MassMutual also argued that Plaintiff's theory that the Asset Valuation Reserve (AVR) was where the MVM was accounted for under modern statutory accounting principles, was one of "implied repeal," against which there is a "strong presumption" under Massachusetts law, citing *Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981) (courts are "loath to find that a prior statute has been superseded in whole or in part in the absence of express words to that effect or of clear implication"). In addition, MassMutual asserted that Plaintiff's interpretation of the Safety Fund law is contrary to the unambiguous text of Section 141, citing *Reading Coop. Bank v. Suffolk Constr. Co.*, 464 Mass. 543, 547-48 (2013) ("If the language of the statute is unambiguous, our function is to enforce the statute according to its terms." (citations omitted)). Finally, MassMutual argued that Plaintiff's complaint is time-barred, based on deposition testimony it claimed showed that its Safety Fund calculations were public records and that Plaintiff was thus aware of the facts giving rise to her claims over 10 years before she filed suit.

MassMutual accordingly filed a motion for summary judgment in May 2016 [ECF 203], proffering all these independent grounds for summary dismissal of Plaintiff's entire Complaint. Oral argument was held on July 27, 2016, and the Court took the matter under advisement.

Above and beyond all the foregoing risks of non-recovery, the Massachusetts Legislature on August 10, 2016, enacted legislation that afforded MassMutual a potentially case-dispositive defense. Specifically, the Massachusetts Legislature *amended* Section 141 to increase the Safety Fund percentage limit from 12% to 20%, while retaining language that MassMutual argued grandfathered its earlier retention of surplus in excess of the prior limit. If accepted, this contention would have eliminated damages since MassMutual's alleged excess surplus was below 20%.

Although Plaintiff of course disputed these arguments, further litigation posed an undeniable risk that MassMutual's summary judgment motion would have been allowed, that the amendment to Section 141 would have retroactive effect, and/or that the Plaintiff's motion for class certification would be denied – any one of which would have resulted in no recovery at all to the Class Members. *See In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("plaintiffs risked recovering significantly less than what their own expert estimated in damages if they proceeded to trial").

### 5.    The Amount of Time Devoted to the Case by Class Counsel.

Class Counsel have devoted years of uncompensated effort to investigate, file, litigate, settle, and administer this class action. As described above, prior to mediation Class Counsel researched, reviewed and analyzed many thousands of documents consisting of nearly 170,000 pages, including complex accounting and historical records spanning over a hundred years, engaged in extensive discovery and related motion practice, took and/or defended dozens of depositions, consulted and retained numerous experts in life insurance and its products, statutory accounting, actuarial sciences, finance, rating agencies and solvency, reviewed and analyzed dozens of expert reports, and responses thereto, briefed and argued dispositive motions, and performed numerous other tasks related to Plaintiff's claims concerning MassMutual's Safety Fund calculation and the Company's defenses.  Adkins Decl. at ¶¶ 3, 15-26.

All told, Class Counsel expended 12,840.6 hours of attorney, paralegal, and staff member time to date. Adkins Decl. at ¶ 30; Friedman Decl. at ¶ 4; Chavez Decl. at ¶ 4. These hours, compiled from contemporaneous time records maintained by each firm participating in the case, are reasonable for a complex class case like this. Adkins Decl. at ¶¶ 30-31. Given the contingent nature of Class Counsel's recovery of fees, there was every incentive to economize and otherwise avoid duplicative effort.

Furthermore, the requested fee is not based solely on time and effort expended in the past; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. S*ee, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").

### 6.    Awards in Similar Cases.

The requested benchmark fee of 25 percent of the $37.5 million common fund is comparable to, or less than, fees routinely awarded in similar cases. In fact, in class action cases seeking dividends and other payments from insurance and financial services companies, and in analogous antitrust litigation, "contingency fees of 25 percent are common" and are "consistent" with settlements in the District of Massachusetts and the First Circuit. *See Bezdek*, 79 F. Supp. 3d at 349-50 (quoting *Latorraca*, 834 F. Supp. 2d at 27-28 ("Within the First Circuit, courts generally award fees in the range of 20–30%, with 25% as the benchmark" (quotations omitted)); *In re Relafen*, 231 F.R.D. at 80 (holding that attorneys' fees of 33% of settlement fund fee was reasonable in a class action antitrust suit which advanced through various stages of litigation over four years, where class counsel successfully countered a motion to dismiss and spent significant time on discovery and "hundreds of hours" consulting with experts"); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (district court approved a $1.93 million fee award that was one-third of the settlement); *Boyajian*

*v. California Prods. Corp.*, No. 10–CV–11849–rwz, 2013 WL 3828804, at * 2-3 (D. Mass. July 9, 2013) (approving award of 30% of $1.925 million common fund and noting award is "consistent with awards in similar cases"). [4]

### 7.    Public Policy Considerations.

Public policy considerations support the requested fee to reward Class Counsel, who successfully challenged MassMutual's underpayment of annual policy dividends. Courts look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973). An award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee, since this case was brought on behalf of consumers and hard fought against one of the largest insurance companies in the United States to enforce the participating policyholders' alleged statutory and contractual rights.  If contingent-fee counsel are not adequately compensated out of the recoveries they obtain, capable firms will be unwilling to venture the risk to obtain recoveries for consumers of the sort achieved here. Adkins Decl. at ¶¶ 38-39.

### 8.    The Endorsement of Plaintiff and Reaction of the Settlement Class.

Finally, the reasonableness of the requested fee is bolstered by the support of the Class Representative for the Settlement and the requested fee award. *Hill,* 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.").  Here, Class Representative Bacchi fully supports both the Settlement Agreement and the requested fee award. Adkins Decl. at ¶ 7.  Although the Class

---

[4] "An empirical study of federal class action fee awards in 2006 and 2007 found that nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund," and in the First Circuit the mean and median awards were 27 percent and 25 percent, respectively. *In re Neurontin*, 58 F. Supp. 3d at 172 (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811, 833–34, 836 (2010)).

received notice that Class Counsel would request attorneys' fees of up to 25 percent of the common fund plus reimbursement of their expenses, to date only 13 out of 2.71 million policyholders (or 0.0005% of the Class Members) have objected to any portion of the Settlement, only 11 to Class Counsel's fee request (0.0004% of the Class Members), and only 206 (0.0076% of the Class Members) have excluded themselves from the Settlement.  Given the enormous number of par policyholders receiving class notice, this response should be viewed as a ringing endorsement of the Settlement Agreement, including the proposed fee award. *See Bezdek.*, 79 F. Supp. 3d at 351 ("overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).[5]

### E.   The Reasonableness of Class Counsel's Fee Request Is Confirmed by a Lodestar Cross-Check.

Courts in this Circuit may "cross-check" the reasonableness of a percentage fee award by comparing it against the estimated fee award under the lodestar method. *See In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *6; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215–16 (D. Me. 2003); *see generally, Manual for Complex Litigation* (Fourth) § 14.122 (2004) ("[t]he lodestar is ... useful as a cross-check on the percentage method" of determining reasonable attorneys' fees); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

Class Counsel's aggregate lodestar in this Action is $7,165,025.50. Adkins Decl. at ¶¶ 6, 30. Class Counsel are mindful of criticisms generated by lodestar submissions in other cases, and

---

[5] Although Class Counsel will respond to each objection directly in advance of the Final Approval Hearing, the objections received to date generally express dissatisfaction with the absolute dollar amount of the fee when compared *not* to the overall common fund generated to the class, but to the anticipated *individual recovery* to the objector.  *But see In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) ("By assessing attorneys' fees and litigation expenses against a common fund, the court spreads these costs proportionally among those benefitted by the suit."). This common misunderstanding has frequently been addressed by the courts, who recognize that a fair percentage award of the common fund does not overcompensate counsel for the benefit generated to the individual class member, who risked nothing to recover that benefit. *Id.* at 271-72 & 273 (overruling objections that percentage award was too large).

have accordingly taken care to ensure: (a) that the reported lodestar does not include mark-up on contract lawyers, and (b) that billing judgment has been exercised to eliminate duplicative or *de minimis* time.  *Id. at* ¶ 29; Friedman Decl. at ¶ 3; Chavez Decl. at ¶ 3.  After such voluntary reductions, when compared to the 25% percentage of fund fee, this yields a very modest lodestar multiplier of only 1.31. Multipliers of 2 and more have been found reasonable in many common fund cases. *See In re Relafen*, 231 F.R.D. at 82 (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases, noting that they typically ranged from 1.0 to 4.0); *see e.g., Roberts*, 2016 WL 8677312, at *13 (finding lodestar multiplier of 1.96 reasonable).

**II.**   **CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES.**

Class Counsel respectfully also request Court approval for the reimbursement of $1,533,575.85 in out-of-pocket litigation expenses. Adkins Decl. at ¶¶ 6, 32; *see also* Friedman Decl. at ¶ 5; Chavez Decl. at ¶ 5. "Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill*, 2015 WL 127728, at *20 (citing *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (counsel are entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax"); *see, e.g., Bilewicz*, 2014 WL 8332137, at *6 (awarding litigation expenses in addition to common fund attorneys' fees).

Here, Class Counsel's incurrence of litigation expenses – especially in connection with experts retained by Plaintiff – was critical to the diligent prosecution of the Class claims. Adkins Decl. at ¶ 32. They include expert fees, filing fees, postage, transportation, working meals, printing, electronic research, consultant fees, and Plaintiff's share of the mediator's fees. *See* Adkins Decl. at ¶ 32; Friedman Decl. at ¶ 5; and Chavez Decl. at ¶ 5. Such costs "are the types of expenses that are necessarily incurred in litigation of this type" and are "reasonable in light of the length and scope of this litigation." *Hill*, 2015 WL 127728, at *21; *see, e.g., Bezdek*, 79 F. Supp. 3d at 351- 52; *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (approving reimbursement of class counsel's expenses, including

court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and plaintiffs' share of the mediator's fees, and finding that they were reasonable and had been incidental and necessary to the representation of the class). Once again, because Class Counsel incurred these expenses with absolutely no assurance of recovery, they were highly motivated to proceed in the most cost-effective manner possible. Adkins Decl. at ¶ 32.

## III.   THE COURT SHOULD APPROVE A $3,000 INCENTIVE AWARD TO PLAINTIFF.

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit. *Scovil*, 2014 WL 1057079, at *6. In their discretion, courts typically award special compensation to the class representative in recognition of the time and effort he or she has invested for the benefit of the class. *See In re Relafen*, 231 F.R.D. at 82. A substantial incentive award is appropriate where the class representatives "have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations and sacrifices." *In re Prudential*, 2014 WL 6968424, at *7; *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) ("A substantial incentive award is appropriate in [a] complex … case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts.").

Service awards generally run between $2,500 to $10,000, and can run to $25,000 or more. *See, e.g., Scovil*, 2014 WL 1057079, at *7-8 (approving service awards ranging from $10,000 to $20,000). Here Class Counsel seeks approval of an exceptionally modest incentive award, of only $3,000. Stipulation at § IX(A). Plaintiff is deserving of this award. Adkins Decl. at ¶¶ 9, 23. Among other things, Plaintiff requested and obtained critical documents regarding the MassMutual policies at issue in this case; she aided Class Counsel's investigation and ability to prepare a detailed complaint; and she expended considerable time assisting Class Counsel in preparing and litigating this case, including, without limitation, reviewing documents and briefs and making

herself available for her deposition and to respond to MassMutual's numerous document requests and interrogatories.  *Id.* Plaintiff did all this willingly, never wavering in her support for the participating policyholders in spite of the frequent demands placed on her. *Id.* Accordingly, an incentive award of $3,000 is eminently fair and reasonable under the circumstances.

## CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court enter an Order awarding Class Counsel $9,375,000 in attorneys' fees, $1,533,575.85 in reimbursed litigation expenses, and $3,000 as a Class Representative incentive award.


Dated: June 19, 2017.                        Respectfully submitted,

                                              /s/ Jason B. Adkins
                                             Jason B. Adkins, BBO #558560
                                             John Peter Zavez, BBO #555721
                                             ADKINS, KELSTON & ZAVEZ, P.C.
                                             90 Canal Street, 5th Floor
                                             Boston, MA  02114
                                             Phone (617) 367-1040
                                             Fax (617) 742-8280

                                             Andrew S. Friedman (admitted pro hac vice)
                                             Francis J. Balint, Jr., BBO #680602
                                             BONNETT, FAIRBOURN, FRIEDMAN &
                                                BALINT, P.C.
                                             2325 East Camelback Road, #300
                                             Phoenix, AZ  85016
                                             Phone: (602) 274-1100
                                             Fax: (602) 274-1199

                                             Mark A. Chavez (admitted pro hac vice)
                                             CHAVEZ & GERTLER LLP
                                             42 Miller Avenue
                                             Mill Valley, CA  94941
                                             Phone: (415) 381-5599
                                             Fax: (415) 381-5572

                                             Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 19, 2017.

A copy of the foregoing was mailed this 19th day of June, 2017 to the Settlement Administrator at:

Analytics LLC, Settlement Administrator
Bacchi v. Massachusetts Mutual Life Insurance Co.
P.O. Box 2004
Chanhassen, MN 55317-2004


Dated:  June 19, 2017                 /s/ Jason B. Adkins
                                      Jason B. Adkins