UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN L. BACCHI, <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 12-11280-DJC |

ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES
AND FEE AWARDS

CASPER, J.                                                                                                November 8, 2017

I.    Introduction

After having preliminarily certified the class in this case pursuant to Fed. R. Civ. P. 23 and having preliminarily approved the class action settlement, D. 240, this Court conducted a final fairness hearing on July 27, 2017. D. 301, 302. As noticed, the final hearing was for the purpose of determining whether the Court should grant final approval to the class action settlement and the attorneys' fees and expenses and any incentive award to the named plaintiff, Karen L. Bacchi ("Bacchi"). D. 240 at 3. Before and at the hearing, the Court received objections from certain class members, the majority of which concerned, at base, the proposed award of attorneys' fees to class counsel. For the reasons summarized in D. 240 and further below, the Court GRANTS final

1

certification of the class for settlement purposes under Fed. R. Civ. P. 23(e) and final approval of the settlement, D. 294, and AWARDS attorneys' fees and expenses sought by class counsel and the incentive award sought for Bacchi, D. 264.

## II. Procedural History

Over five years ago, Bacchi brought this action Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") on behalf of a purported class of similarly situated MassMutual policyholders asserting claims regarding MassMutual's safety fund calculation, alleging that the company retained monies that it should have distributed to policyholders as dividends. D. 1, 35. After several years of hard fought litigation between the parties and a mediation that resulted in the proposed settlement, the Court preliminarily granted approval of that settlement agreement and certification of the class for this purpose, approved the procedure for providing notice to the class of same and scheduling a hearing for consideration of the final approval of the settlement and determination of any fee awards. D. 240.

## III. Class Certification

For all of the reasons previously stated in the Court's Order of preliminary approval, D. 240, and on the record at the March 29, 2017 hearing regarding same, D. 242 at 8-10, I certify the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) as defined in D. 240, ¶ 3.

## IV. Final Approval of Settlement under Fed. R. Civ. P. 23(e)(2)

For all of the reasons previously stated in the Court's Order of preliminary approval, D. 240, and on the record at the March 29, 2017 hearing regarding same, D. 242 at 8-10, and further addressed here, I find that the proposed settlement is fair, reasonable and adequate as required under Rule 23(e)(2).

*The Settlement is a Mediated Resolution After Extensive Litigation.* As the Court has previously noted, D. 242 at 8, this settlement came as the result of the parties' mediation after a significant period of litigation in this case. The course of that litigation involved approximately two years in which the parties completed both fact and expert discovery. D. 296 at 11. Although the Court (Tauro, J.) had previously denied MassMutual's motion to dismiss, D. 35, it had MassMutual's motion for summary judgment under advisement, D. 224, at the time that the parties asked the Court to stay any further action on that matter in light of the fact that parties were in the midst of attempting resolve the matter through mediation, D. 230, 231, which resulted in the proposed class settlement now before the Court, D. 235.

*The Parties Reached This Settlement at Arm's Length Negotiations.* As the Court has also previously noted, this proposed settlement comes as the result of arm's length negotiations between experienced and competent counsel for both parties. It also comes after a formal mediation before a neutral mediator in December 2016. D. 295 at ¶ 9; D. 265-1 at ¶ 25. Even after this mediation, the parties, on behalf of their respective parties continued to negotiate a settlement that resulted in the settlement that was proposed to the Court initially in March 2017, id.; D. 235, and remained subject to the final approval, after class notice was provided, that the Court now provides.

*This Settlement Avoids the Risk of No Recovery for A Large Class.* Any favorable outcome for the class in this case on the merits was, at best, unclear. See D. 296 at 10-11. As aforementioned, MassMutual's motion for summary judgment remained pending and, as Plaintiffs' counsel points out, a recent amendment of the Massachusetts safety fund law allowed an insurer, such as MassMutual, to retain a surplus of up to 20% of its reserve, a figure which the defendant did not exceed here, D. 296 at 11, and which may have likely put another obstacle in

3

Bacchi's path otherwise to obtaining the relief that she sought on behalf on the class. Moreover, the proposed settlement achieves some positive results for the class. The settlement provides for a common fund of $37.5 million for class members, MassMutual will continue for at least ten years to provide safety fund calculations to the Massachusetts Division of Insurance and MassMutual will pay the costs and expenses for administrating and distributing the settlement funds to class members (an expense that Plaintiffs estimate to exceed $3 million). Id. at 11; D. 235 at 17-20; D. 265 at 12. The distribution of the common fund to each class member will be based on a *pro rata* amount of dividends received over the class period, provided that such *pro rata* share is greater than or equal to one dollar. D. 235 at 17.[1]

*The Objections of a Small Number of Class Members Does Not Warrant Rejection of the Settlement.* The vast majority of the class registered no objections to the proposed settlement. The total objections received from class members did not exceed approximately 35, D. 296 at 14; D. 296-1; D. 293; D. 302 at 41-42, representing a very small percentage of the approximate 2.71 million class members. Moreover, having considered all of the objections filed by class members, the Court concludes that none of the objections warrant rejection of the proposed settlement. The Court has not attempted to repeat every objection here, but does summarize the general categories of these objections.

First, to the extent that some of the class members objected because they contend that MassMutual was not culpable and that the Plaintiffs' claims are frivolous, the Court rejects such objections where Plaintiffs asserted legal claims that survived MassMutual's motion to dismiss

---

[1] To extent that any class members objected on the grounds that the benefit to the class members was not sufficiently defined, D. 293-2, or the *de minimis* threshold of one dollar was inappropriate, D. 244, 283, the Court rejects those objections. See Hill v. State Street Corp., No. 09-cv-12146, 2015 WL 127728, at *12 (D. Mass. January 8, 2015) and cases cited.

4

and although the ability for Plaintiffs to prevail on the merits of the claims was uncertain, there was risk (and certainly, increased litigation costs) to MassMutual if this case had not settled and had proceeded through resolution by summary judgment or at trial.

Second, disagreements about the legal mechanism of using a class action to pursue these claims, presenting such civil claims in a judicial forum and not a regulatory one (or, alternatively, as criminal charges) or requiring the mailing of objections (as is standard procedure in class settlement review processes, see D. 296 at 22), does not bear great weight as to whether this specific settlement is fair, reasonable and adequate and does not compel the Court to reject the proposed settlement.

Third, to the extent that some objectors contend that the settlement amount is too small, the Court does not agree given the uncertainty that Plaintiffs faced of no recovery whatsoever if the parties had not settled and had continued to litigate. See In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 97-98 (D. Mass. 2005). The Court also considered the objections by some members, see, e.g., D. 244, 266, that the size of the common fund that MassMutual has to pay as a result of the settlement will adversely affect MassMutual and, ultimately, its policyholders including class members. However, as both parties have asserted at different junctures in this case, MassMutual maintains a sufficient capital ratio and continues to hold the statutorily mandated reserves and surplus assets, D. 205 ¶ 5; 295 ¶ 15, and there is nothing to suggest that this state of affairs will be materially changed by its funding of the common fund here.

Fourth, to the extent some class members objected to the scope of the release of claims of the class members, D. 282, 283, the Court concludes that such release is appropriate as consideration of the settlement achieved, particularly when the definition of "Released Claims" includes limitations including but not limited to that such claims shall "arise out of or in any way

relate to the subject matter of the Action and have been, or could have been asserted in the Action or any court or forum . . . concerning in any respect, MassMutual's compliance with M.G.L. c. 175, §§ 1401 or 141" and where there is a specific exclusion for "the certified class claims currently pending in the [Chavez action], currently pending in the Superior Court for the County of Los Angeles, California." D. 235 at 7-8.[2]

Fifth, to extent that a number of the class members objected to the proposed award of attorneys' fees to class counsel, either in and of itself or as by comparison to the likely pro rata share that any class member would likely receive, the Court declines to reject the settlement on this basis, but returns to this issue in the determination of the attorneys' fees award as discussed below. The settlement agreement itself only capped any attorneys' fees award that class counsel could seek at 25% of the "Cash Settlement Amount" (i.e., the common fund of $37.5 million), but otherwise left the determination of the appropriate attorneys' fee award to the Court. D. 235 at 16.

## V. Attorneys' Fees and Expenses for Class Counsel

Class counsel seeks an award of $9,375,000 in attorneys' fees, $1,533,575.85 in unreimbursed litigation expenses and an incentive award of $3,000 to the named plaintiff. D. 264 at 1; D. 298 at 2. The attorneys' fees, which represents 25% of the Cash Settlement Amount, and expenses shall come from the Cash Settlement Amount. D. 35 at 16.

### A. **Attorneys' Fees**

As required by Fed. R. Civ. P. 23(h), the Court may award reasonable attorney's fees and costs to class counsel. The First Circuit has recognized that "the prevailing praxis" for such

---

[2] This "carveout" of claims in the Chavez class action was the subject of some discussion at the July 27th hearing when counsel for the named plaintiff in that matter appeared to confirm that the carveout for the claims in the Chavez class action from "Released Claims" here means what it says and that MassMutual would honor that part of the settlement agreement. D. 302 at 4-21; see D. 274, 291.

6

determination is the "percentage of fund" approach when awarding fees to class counsel, In re Thirteen Appeals, 56 F.3d 295, 307 (1st Cir. 1995), but given the availability of the lodestar approach as an alternative approach, id., a court may also, in its discretion, consider a "lodestar cross check" to gauge the reasonableness of any percentage of fund award. See In re Lupron, No. 01-cv-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. August 17, 2005).

Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent. See Mazola v. May Dept. Stores Co., No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. January 27, 1999); In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d 167, 172 (D. Mass. 2014). In assessing whether the attorney fee award sought here by class counsel, at 25% of the common fund, is reasonable, the Court has considered the factors that courts have generally weighed in making such determinations, Roberts v. TJX Co., Inc., 2016 WL 8677312, at *10 (D. Mass. September 30, 2016) (citing In re Relafen Antitrust Litig., 231 F.R.D. 52, 79 (D. Mass. 2006); In re Tyco, 535 F. Supp. 2d 249, 266 (D.N.H. 2007); In re Lupron, 2005 WL 2006833, at *3), and does so now in turn.

First, as previously noted above, the size of the common fund is substantial and even with the subtraction of attorneys' fees will benefit a large class of policyholders, who, as result of the Rule 23 mechanism and representation by Bacchi, the class representative, and class counsel, did not have to initiate or participate in the litigation to have their *pro rata* share of the common fund as established under the terms of the settlement.

Second, as also noted above, this case involved extensive litigation over a course of years and involved disputes between the parties at the outset (in the form of MassMutual's motion to dismiss), numerous battles during the course of discovery and full-throated opposition to

7

MassMutual's motion for summary judgment that remained pending at the time that the parties undertook to resolve this case by mediation, short of further time, effort and money that continued litigation may have taken. Moreover, the cost/benefit analysis of the putative class continuing this litigation to a resolution on the merits was unclear where the risk of non-recovery either upon resolution of summary judgment or at trial loomed.

Third, skilled and experienced class counsel brought this case on behalf of Bacchi and the putative class on a contingency fee basis. D. 265-1 at 18. That is, they bore all of the costs and expenses of bringing this action regarding complex claims against a well-financed and well represented defendant, MassMutual, through years of litigation as well as the risk of adverse judgment. Certainly, courts have considered whether the contingency fee structure and percentage of fund approach to attorneys' fee awards have served to incentivize class counsel to agree to early settlements on sub-optimal terms for the class, but with large fee awards to themselves. See Roberts, 2016 WL 8677312, at *12; Sakiko Fujiwara v. Sushi Yasuda, Ltd, 58 F. Supp. 3d 424, 429-30 (S.D.N.Y. 2014). Certainly, this was the point that a number of objections from class members have registered to the attorneys' fee award sought here. See, e.g., D. 244, 248, 250, 251, 258, 266, 268, 275, 280, 285, D. 302 at 41-42. The proper alignment of risk and benefits between class counsel and the class, however, depends largely upon the facts and circumstances of the specific case and the terms of the proposed settlement. Unlike in other cases, the settlement reached here came not early in the case, but after extensive discovery and on the heels of a summary judgment motion when presumably counsel on both sides, class counsel and counsel for MassMutual, understood the strengths and weaknesses of their positions and the risk of proceeding to resolutions on the merits of the claims. Also, unlike other cases, whatever the size of an individual class member's award, the class member need not claim such award, as the settlement

8

provides that MassMutual shall credit or pay such shares automatically within thirty days and forty-two days, respectively, of the effective date of the settlement. D. 235 at 18-19. That is, this is not a situation in which class counsel will get its fee award and class members who do not register claims will not gain the benefit of the settlement. Compare Roberts, 2016 WL 8677312 at *11. Moreover, any shares that cannot be paid to class members (e.g., because they cannot be located or fail to deposit or cash a check tendered to them) will not revert to MassMutual (that agreed not to object to class counsel's request for attorney's fees that did not exceed 25% of the common fund, D. 235 at 16), but shall be paid in equal shares to charities identified in the settlement agreement. Lastly, this is not a case in which class counsel seeks an award at the higher end of the benchmark for percentage of fund awards (one-third or more), but 25%, on the lower end of those benchmarks.

Fifth, the Court has considered the objections, approximately seventeen, to the attorneys' fee award, that were registered by some class members. See, e.g., D. 244, 248, 250, 251, 258, 266, 268, 275, 280, 285, 293-1, 302 at 41-42. Although the number of these objections was a small percentage of the full class, those that were registered were strenuous in their opposition to the amount of the attorneys' fee award sought here. Some of these objections reflected concern about unaligned incentives between class counsel and the purported class, as addressed above. Some objections appeared to take issue with the notion of contingency fee structures in class actions in general, which, as suggested above, the Court rejects as a basis here for rejecting the proposed award. Finally, a number of the objections objected that the attorneys' fees award in total was excessive and unfair when viewed in comparison to the average $22.02 payout that the parties estimate for each of the 2.7 million class members. See, e.g., D. 248, 250. Although the Court understands why individual class members would make the comparison of any attorneys' fees

award to any individual recovery that they each might each receive, the appropriate focus for the Court's analysis is on a comparison to the recovery as a class as a whole. See In re Tyco, 535 F. Supp. 2d at 265. Class certification under Rule 23(b)(3) for settlement purposes, which is appropriate here, allows for recovery for a class, that among other things, is too numerous to proceed on such claims against MassMutual alone and it would not be feasible for any class member(s) to do so on their own, particularly where any individual recovery would pale in comparison to the costs of individual litigation. Moreover, under the percentage of fund calculation, the relative size of the attorneys' fees award reflects not just the upfront cost and risk that class counsel undertook and maintained during the course of this litigation, but the size of the common fund that they recovered on the behalf of the sizable number of class members. See Mokover v. Neco Enterprises, Inc., 785 F. Supp. 1083, 1087 (D.R.I. 1992) (noting that with the percentage of fund approach, "the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured").

Sixth, the Court has considered the lodestar cross check as to the reasonableness of the percentage of fund award sought here. The lodestar check here amounts to 1.31, D. 265 at 25, at the lower end of multipliers reflected in other cases (see, e.g., In re Relafen, 231 F.R.D. at 82 (noting that multipliers have ranged from 1.0 to 4.0 and concluding that a multiplier of 2.02 was appropriate)) and is supported by the submission by class counsel. D. 265-1 at 14-16. While the lodestar approach may be more imperfect as a sole measure of the reasonableness of a fee award, the Court considered it here in conjunction with the other considerations that it has explained above and finds that it lends support to the award that class counsel seeks here.

Finally, as to public policy considerations, those weigh in favor of approving the fee award sought here. Although the Court recognizes that "the public has no particular interest in whether

or not lawyers are paid a fee for bringing class actions," In re Lupron, 2005 WL 2006833, at *6, there is a public interest in having experienced counsel undertake the risk of pursuing litigation regarding the dividends distributed to the several million policyholders in the class and achieving a benefit for them that might not otherwise have been achieved.

   B.   **Litigation Expenses**

As to the litigation expenses of $1,533,575.85 that class counsel seeks here, the Court has reviewed the submission supporting same. D. 265-1 at 16, 29-30; D. 265-2 at 4, 8; D. 265-3 at 4, 8. This Court cannot say that such expenses, either in whole or in any particular part, are unreasonable, particularly given the course of contested litigation, the need to defend against dispositive motions at two junctures, conduct extensive discovery and the required engagement of experts given the complexity of the claims and defenses here. D. 265-1 at ¶¶ 34-37. Accordingly, the Court shall grant this award of costs.

## VI. Incentive Award to Named Plaintiff

There was at least one objection to the proposed incentive award to Bacchi as the named plaintiff. D. 244. Such awards, however, are customary and appropriate in recognition of a named plaintiff who has served, as is the case here, as the class representative through extensive litigation and has assisted class counsel, by, among other things, obtaining critical documents, reviewing filings and otherwise assisting class counsel in the prosecution of this case. See D. 265-1 at ¶ 23. Moreover, the $3000 award sought here is reasonable and more modest than awards sought in other matters. See, e.g., In re Relafen, 231 F.R.D. at 82 (awarding $8,000 for each named consumer); Scovil v. Fedex Ground Package Sys., Inc., No 10-cv-515-DBH, 2014 WL 1057079, at *7-8 (D. Me. March 14, 2014) (noting a range of incentive awards in other cases and approving

incentive awards from $15,000 to $20,000 to the various named plaintiffs). Accordingly, the Court grants the incentive award in the amount of $3000 to Bacchi.

**VII.    Conclusion**

For the reasons discussed above, the Court GRANTS final approval to the class settlement, CERTIFIES the class under Fed. R. Civ. P. 23(b)(3) for the purposes of the settlement, D. 294, and AWARDS $9,375,000 in attorneys' fees and $1,533,575.85 in unreimbursed litigation expenses to class counsel and an incentive award of $3,000 to Bacchi, D. 264.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge