IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| KAREN L. BACCHI, Individually and on Behalf of all Persons Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>)   Civil Action No. 12-cv-11280-DJC<br>) |
| v. | )<br>)<br>) |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO SET APPEAL BOND WITH REQUEST FOR EXPEDITED OPPOSITION FILING DATE, IF ANY

Dated: January 9, 2018.

Jason B. Adkins, BBO #558560
John Peter Zavez, BBO #555721
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, 5th Floor
Boston, MA  02114
Phone (617) 367-1040
Fax (617) 742-8280

Andrew S. Friedman (admitted *pro hac vice*)
Francis J. Balint, Jr., BBO #680602
BONNETT, FAIRBOURN, FRIEDMAN &
   BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ  85016
Phone: (602) 274-1100
Fax: (602) 274-1199

Mark A. Chavez (admitted *pro hac vice*)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA  94941
Phone: (415) 381-5599
Fax: (415) 381-5572

*Attorneys for Plaintiff/Class Representative Karen L. Bacchi*

I.     **INTRODUCTION**

Plaintiff/Class Representative Karen Bacchi ("Plaintiff") respectfully requests pursuant to Rules 7, 38 & 39, *Federal Rules of Civil Appellate Procedure*, and First Circuit Local Rule 38.0, that the Court in its discretion set an appeal bond to protect Plaintiff, the Settlement Class and Class Counsel against the costs they will incur in defending the appeal of this Court's final order approving all aspects of the settlement of class claims alleged in the above-captioned litigation against Defendant Massachusetts Mutual Life Insurance Company ("MassMutual").[1]

Here, only two MassMutual policyholders – Caroline Tucker and Francis Vitale (collectively, "Objectors") – have filed notices of appeal of the Final Approval Order, effectively staying the benefits of the Settlement Agreement for every other policyholder in the 2.71 million-member Settlement Class.  Because Objectors raised make-weight issues governed by well-established class action precedent, this Court rejected their objections on the merits, and there is little doubt that the First Circuit will find no abuse of discretion on appeal.  Furthermore, it turns out that Ms. Tucker and Mr. Vitale are serial objectors, having repeatedly lodged objections to class settlements without effecting any beneficial change for the members of the respective settlement class.

In short, Objectors' appeals are both (a) facially meritless, and (b) asserted neither in good faith nor in the best interests of the Class. Requiring an appeal bond in such situations ensures that the approved class action settlement will not be held up by spoilers who have little genuine interest in benefitting the class. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 276-77 (D. Mass. 2007) (requiring appeal bond of sole objector to class settlement); *Barnes v. Fleetboston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (same).

---

[1] The terms of the settlement are set forth in the Parties' "Stipulation and Agreement of Compromise, Settlement and Release of Action" filed on March 13, 2017 [Doc. 235 ("Settlement Agreement")], as preliminarily approved by this Court on March 29, 2017 [Doc. 240 ("Preliminary Approval Order")], and as finally approved by the Court on November 8, 2017 [Doc. 308 ("Final Approval Order")].

## II.  PROCEDURAL BACKGROUND

Pending since 2012, this Massachusetts Safety Fund litigation was fully and fairly resolved by way of a class action settlement that provides, *inter alia*, a $37.5 million common fund for participating policyholders and other prospective benefits for the Class as detailed in the Final Approval Order, at 3-4.  Not only did MassMutual agree to this sizeable common fund, it also agreed to continue for at least ten years to provide voluntary annual Safety Fund calculations to the Massachusetts Division of Insurance. *Id.*  Furthermore, MassMutual agreed to pay for the cost of providing class notice and administration of the Settlement separate and apart from the common fund and injunctive relief. *Id.* The Settlement Class of 2.71 million MassMutual policyholders overwhelming approved the Settlement, at a 99.99% acceptance rate.  *See* Mem. in Support of Plaintiff's Motion for Final Approval of Proposed Class Settlement [ECF No. 296], at 2.

Ms. Tucker and Mr. Vitale nevertheless objected to the settlement. ECF No. 280 (Mr. Vitale's objection) & No. 283 (Ms. Tucker's objection).  The Court carefully considered these (and all) objections and found them to be meritless. Final Approval Order, at 4 ("… having considered all of the objections filed by class members, the Court concludes that none of the objections warrant rejection of the proposed settlement"). Ms. Tucker and Mr. Vitale then filed successive Notices of Appeal. ECF Nos. 311 (Ms. Tucker's Notice of Appeal) & 314 (Mr. Vitale's Notice of Appeal).  There are no other appeals.

## III.  APPLICABLE STANDARD

"In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7 ("Rule 7"); *see generally, Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). In applying this rule, "[t]he determination of the nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick,* 820 F.2d at 15; *see also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal.").

The First Circuit has furthermore held that when the district court determines that an appeal "might be frivolous," it may require security for additional reasonably anticipated costs, including appellate attorneys' fees that may be awarded on appeal pursuant to Fed. R. App. P. 38 and 39 as a sanction for a frivolous appeal. *Sckolnick*, 820 F.2d at 15; *see also Hill v. State St. Corp.* (*Hill I*), Civ. A. No. 09-12146-GAO, 2015 WL 1734996, at \*3 (D. Mass. Apr. 16, 2015) (setting appeal bond allowing for taxable costs **and** attorney's fees **and** administrative costs), *appeal summarily dismissed*, 794 F.3d 227 (*Hill II*) (1st Cir. 2015).

## IV.   LEGAL ARGUMENT

### A.   An Appeal Bond Should Be Required to Protect Plaintiff, the Class and Class Counsel.

Substantial appeal bonds are routinely required to protect the plaintiff and class in the event of objector appeals of approved class action settlements. *See, e.g., Hoff v. Popular, Inc.*, Civil No. 09-1428 (GAG/BJM), slip op. (D.P.R. Jan. 9, 2012) (requiring $160,000 bond, including $125,000 in estimated attorneys' fees and $35,000 in costs); *Barnes*, 2006 WL 6916834, at \*3 (requiring $645,111.50 bond, to cover estimated costs of objector's appeal); *In re Pharm. Indus.*, 520 F. Supp. 2d at 279 (requiring $61,000 bond for administrative costs that class would suffer as a result of delay in distribution from class action settlement).  Such an appeal bond is fully warranted here.

*First*, as shown below, the Court carefully considered the Objectors' contentions and found them wanting.  Final Approval Order, at 2-6 & 9-10. The likelihood that the Objectors will fare better on appeal is miniscule, because (1) their objections clash with well-established principles of class action jurisprudence under Rule 23(e), (2) their objections raise issues governed on appeal by an abuse of discretion standard, and (3) any conceivable breach of discretion by the district court would be harmless error at best. The sole consequence of Objectors' appeals is delay in receipt of the benefits of the Settlement Agreement for millions of MassMutual policyholders.

*Second*, as also shown below, Ms. Tucker and Mr. Vitale are serial objectors who have a pattern of repeatedly objecting to class action settlements. In fact, Objector Vitale was represented in the appeal of another class action settlement by an attorney who is a well-known professional

objector, criticized by several courts for hiding behind the submissions of ostensibly *pro se* objectors and/or other local counsel. Courts routinely hold that appeal bonds are particularly appropriate when such serial objectors pursue appeals that would not likely benefit the class. *See, e.g., Barnes*, 2006 WL 6916834, at *1 ("by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class"); *see also, In re Pharm. Indus.*, 520 F. Supp. 2d at 278 ("[r]equiring objectors to post a bond will ensure that a class litigating a frivolous appeal will not be injured or held up by spoilers").

    **1.**    **Objectors' Appeals Will Only Cause Delay and Needless Additional Expense.**

Objectors' appeals of the Final Approval Order stand zero chance of success, particularly given the "abuse of discretion" standard governing the Objectors' appeal. *See, e.g., Hill II*, 794 F.3d at 230 ("Having now fully reviewed objectors' brief on the merits of their appeal, we find that the district court was well within its discretion in rejecting the objections that are now pressed on this appeal."); *see generally, Voss v. Rolland*, 592 F.3d 242, 245-46 (1st Cir. 2010) ("We review for abuse of discretion the district court's [decision] . . . whether to approve the . . . settlement"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009) ("We review the district court's approval of a settlement for abuse of discretion.").

In her two-page objection here, Objector Tucker asserts tread-worn arguments that (a) the settlement benefits are too small, (b) the release is "overbroad," (c) the adequacy requirement of Rule 24(a) is not satisfied, (d) the requested attorneys fee payment by MassMutual was "too high," and (e) the Court must scrutinize claimed expenses, especially claimed Westlaw charges. ECF No. 283, at 2.  Plaintiff specifically addressed each of these arguments in the final approval and fee briefing [ECF Nos. 295, 296 & 297], and the Court found none of them meritorious – including in particular the purportedly overbroad scope of the class release. Final Approval Order, at 4-11.

In his three-page objection, Objector Vitale similarly argued (a) that the $37.5 million settlement fund was too small, (b) that insufficient information was given to assess the individual class member's *pro rata* recovery, (c) that the settlement did not factor in the time value of money

for delayed dividend payments, and (d) that the 25% common fund fee award was unjustifiably large. ECF No. 280, at 1-3.  Again, Plaintiff addressed each of these concerns in the final approval and fee briefing [ECF Nos. 295, 296 & 297], and the Court found none of the objections meritorious, including in particular the size of the fee award. Final Approval Order, at 4-11.

In short, none of the foregoing objections is particularly novel; to the contrary, Objectors' contentions all fly in the face of controlling precedent to the contrary, including abundant case law within the First Circuit.

For example, assertions that a common fund is insufficient for various and sundry reasons are routinely rejected on appeal, since the determination of sufficiency is fully committed to the discretion of the trial court. *See, e.g., In re Pharm. Indus.*, 588 F.3d at 32-33; *see also, In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97-98 (D. Mass. 2005) ("While it is possible to hypothesize about larger amounts that might have been recovered … '[t]he evaluating court must … guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)); *In re StockerYale, Inc. Sec. Litig.*, Master File No. 1:05cv00177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (where settlement was achieved in the face of "various defenses [that] could result in no liability and zero recovery for the class," the balance weighs in favor of settlement); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999) ("[T]he reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement."); *see generally*, 2 McLaughlin on Class Actions ("McLaughlin") § 6:16 (14th ed.) ("Recognizing that the outcome of litigation is always uncertain and inevitably time-consuming and expensive, courts have long held that a cash settlement providing only a fraction of the potential recovery does not render a settlement inadequate or unfair."). Here the court carefully examined the benefits of the settlement against the risks of continued litigation. *See, e.g.,* Final Approval Order, at 3-4 (noting the risk of no recovery that "MassMutual's motion for

summary judgment remained pending and… a recent amendment of the Massachusetts safety fund law allowed an insurer… to retain up to 20% of its reserve, a figure which the defendant did not exceed here…").

Objector Tucker meanwhile criticizes as overbroad a release of unknown claims to the extent they "arise out of or in any way relate to the subject matter of the Action…." Final Approval Order, at 5-6. Such a release in fact squarely accords with First Circuit precedent. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("[I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.") (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)); *see generally*, 2 McLaughlin § 6:29 ("The 'identical factual predicate' rule provides the outer limit on claims that may properly be included within the scope of the release incorporated in a class action settlement. Thus, release of alternative legal theories or causes of action that were not presented or presentable in the suit is permissible, but those alternative legal claims must be based on 'the very same facts' as the claims that were actually asserted in the complaint and litigated in the settled case.").

Objector Vitale on the other hand criticizes the Class Notice as insufficient for lack of a specific calculation of the participating class member's individual recovery, information that is recognized as not only unnecessary but virtually impossible to calculate in advance of the ultimate distribution. *See, e.g., Harshbarger v. The Penn Mut. Life Ins. Co.*, Civ. A. No. 12-6172, 2017 WL 6525782, at *6 n.5 (E.D. Pa. Dec. 20, 2017) ("courts have consistently rejected such demands for individual quantification of *pro rata* recovery"); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *8 (N.D. Cal. Sept. 29, 2016) (description of recovery on a pro rata basis suffices for class notice; "the failure to disclose class size or an estimate of a member's pro rata share is not a fatal deficiency"); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372-SI, 2014 WL 4672458, at *3 (D. Or. Sept. 18, 2014) (stating that the recovery from the settlement fund would

be a pro rata share suffices); *see generally*, 2 McLaughlin § 6:17 ("The principal purpose of 23(e) is to ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement."). There is surely no abuse of discretion on the part of the district court as to Class Notice.

The same is true of Objectors' assertion that the fee and expense award to Class Counsel is supposedly too large. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 306-08 (1st Cir. 1995) ("use of the POF method in common fund cases is the prevailing praxis," given the "distinct advantages that the POF method can bring to bear in such cases"). The 25% fee award here falls at the mid-point of the recognized range of percentage awards approved in this Circuit. *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349-50 (D. Mass. 2015) ("Within the First Circuit, courts generally award fees in the range of 20–30%, with 25% as the benchmark"), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (internal quotations and citation omitted); *see generally*, 2 McLaughlin § 6:24 ("The equitable nature of an award of attorney's fees from a common fund vests a court with broad discretion to determine a reasonable figure."). The court furthermore reviewed Class Counsel's submissions in support of their application for the award of litigation expenses. Final Approval Order, at 11 ("This Court cannot say that such expenses, either in whole or in any particular part, are unreasonable, particularly given the course of contested litigation, the need to defend against dispositive motions at two junctures, conduct extensive discovery and the require engagement of experts given the complexity of the claims and defenses here.").

Finally, Objector Tucker attacks the approved plan of allocation, which (a) distinguished relief between Class members with in-force policies and those with lapsed or terminated policies, and (b) which included a de minimus relief threshold likewise reveals no abuse of discretion. *See, e.g., In re Pharm. Indus.*, 588 F.3d at 37 (affirming discretion of the district court to determine the most equitable form of distribution of settlement proceeds); *see also, Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *7 (D.R.I. Feb. 17, 2016) (approving proposed

7

plan of allocation as fair, reasonable, and adequate); *see generally*, 2 McLaughlin § 6:23 ("The objective in developing a plan is equitable distribution of finite settlement proceeds."). Plans of allocation that distinguish settlement relief among the settlement class are commonplace. *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006) (approving plan of allocation accounting for class members' relative damages depending on timing of stock sale); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 262 (D.N.H. 2007) (approving a plan of allocation, which compensated class members according to the nature and timing of their Tyco securities transactions, as having a reasonable basis) So too are plans of allocation establishing de minimus pay-outs. *Hill v. State St. Corp.*, Civ. A. No. 09-12146-GAO, 2015 WL 127728, at *12 (D. Mass. Jan. 8, 2015) ("Minimum distribution thresholds are commonly included in plans of allocation"), *appeal dismissed*, *Hill II*, 794 F.3d 227; *see generally*, 2 McLaughlin § 6:23 ("Courts have recognized that minimum payment thresholds for payable claims benefit the class as a whole because they protect the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs. Courts should approve such thresholds, with $10 being a fair and commonly used figure."). Here, the $1 minimum threshold is ten times lower than the $10 standard. Final Approval Order, at 4.

Because on appeal Objectors are limited to the same arguments they raised in their objection, *Saunders v. Town of Hull*, 874 F.3d 324, 331 (1st Cir. 2017) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.") (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991)), and because those arguments are meritless on their face, Objectors' appeals certainly satisfy *Sckolnick*'s "might be frivolous" standard. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (given the court's prior review of and ruling on objection, court had "little difficulty… in reaching the conclusion that the appeal 'might be frivolous,' and that an award of sanctions on appeal is 'a real possibility'").

**2.**   **Ms. Tucker and Mr. Vitale Are Serial Objectors Who Are Using the Appeal to Leverage Their Own Interests.**

Courts also routinely impose a substantial appeal bond where the appeal is taken by a serial or "professional" objector. As one court within this District has explained:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

> Under these circumstances, Fed. R. App. P. 7 makes perfect sense: by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class. Posting a bond sufficient to ensure that the class can recoup the costs of appeal provides the class with an appropriate incentive to litigate the appeals and establish their lack of merit. And if the appeal turns out not to be frivolous despite initially appearing so, the objectors will get almost the entirety of their bond back.

*See Barnes*, 2006 WL 6916834, at *1; *see also, In re Pharm. Indus.*, 520 F. Supp. 2d at 278 ("[r]equiring objectors to post a bond will ensure that a class litigating a frivolous appeal will not be injured or held up by spoilers"). Both Objectors here are such repeat objectors.

**a. Objector Tucker**

Objector Tucker, an attorney, is fairly classified as a "serial objector," having ***personally*** objected recently to ***at least*** three class settlements, including this one. Declaration of Jason B. Adkins ("Adkins Decl.") ¶ 2. Objector Tucker has also, as an attorney for the law firm of "Tucker / Pollard," repeatedly lodged objections to class settlements in just the last several years. Adkins Decl. ¶ 3. In *Keller v. NCAA*, Nos. C 09-1967 & C 09-3329 CW, 2015 WL 6178829, at *3 (N.D. Cal. Oct. 21, 2015), Judge Wilken required Tucker's client to post an appeal bond because the objection was "meritless" and "not likely to succeed." Despite her numerous objections to class action settlements, nothing in Tucker's firm website indicates anything in the way of class action experience. Adkins Decl. ¶ 3 [http://www.tuckerpollard.com].

Plaintiff also notes that counsel of record for Objector Tucker, Mardi Harrison, appeared in this action only *after* the Final Hearing date [ECF Nos. 301, 304], and she did not alter or supplement Objector Tucker's *pro se* objections in any way.  Adkins Decl. ¶ 4.  Attorney Harrison likewise has no purported experience in either life insurance or class action matters; in fact, her practice portrays itself as a one-person employment law firm *Id.* (citing her website: "http://www.suetheboss.com/others.htm").  Nevertheless, Attorney Harrison has herself shown a predilection for filing and then dismissing appeals of class action settlements, likewise producing no benefit for the settlement classes. *Id. See, e.g., In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 16-4425 (3d Cir. Mar. 4, 2017) (appeal settled prior to briefing); *Moore v. Angie's List, Inc.*, No. 16-4430 (3d Cir. Jan. 12, 2017) (same); *Mehigan v. Ascena Retail Grp., Inc.*, No. 16-3409 (3d Cir. Oct. 25, 2016) (appeal dismissed before briefing).  In fact, Attorney Harrison failed to appear for the First Circuit's mandatory mediation conference on December 20, 2017, before the Honorable Patrick J. King (ret.) Settlement Counsel, United States Court of Appeals, First Circuit.

Although Plaintiff is not privy to Objector Tucker's financial condition, we do note that she (1) paid without request for waiver the First Circuit's $505 appeal fee, and (2) subsequently retained legal counsel, suggesting either (a) she is financially secure enough to retain legal counsel on an hourly basis on a very modest consumer claim, or (b) she has retained legal counsel on a contingency basis, in which case her counsel typically advances expenses. Adkins Decl. ¶ 5. Either way, there is sufficient inferential evidence of Objector Tucker's ability to post an appeal bond to shift the burden to her to establish her inability to pay. *Hill I*, 2015 WL 1734996, at *3.

**b. Objector Vitale**

Objector Vitale has likewise objected to at least three class action settlements, including the present action. Adkins Decl. ¶ 6.  Moreover, although Objector Vitale initially filed his objections and appeal filings "*pro se*" in *Arnett* and the present action, it became apparent with the withdrawal of his Ninth Circuit Appeal in *Arnett* that he was in fact represented by Christopher Bandas of the Bandas Law Firm.  Adkins Decl. ¶ 7.  Attorney Bandas and the Bandas Law Firm have an extensive history of objecting to class action settlements, often attempting to conceal their

involvement using purported *pro se* objectors. *See, e.g.*, *In re Gen. Elec. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) ("while [Objector] Hampe is appearing *pro se* before this Court, he admits that he is 'represented in this matter' by attorney Christopher A. Bandas ('Bandas'), who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements"); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 281 F.R.D. 531, 533 n.4 (N.D. Cal. 2012) ("For example, in *Brown v. Wal–Mart Stores, Inc.,* the court stated that 'Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.' ... [Bandas's and his clients'] attempt to inject themselves at the last minute into this eight-year litigation constitutes an effort to extort money from the Class and/or Class Counsel.' *See* Dkt. No. 1062–1, p. 11 of 26 (Order entered in *Brown v. Wal–Mart Stores, Inc.*).").

As for his ability to post an appeal bond, based on Objector Vitale's mailing address he resides on 3.37 acres in a 6,732 square-foot, 6½ bathroom home that last sold for $2.646 million. Adkins Decl. ¶ 8.  The median sales price for the Cove Neck area in New York is $3,168,000. *Id.* Objector also paid without request for waiver the First Circuit's $505 appeal fee.  ECF No. 317. In short, there is no evidence that Objector Vitale is financially unable to post bond; it is therefore incumbent on Mr. Vitale to establish otherwise.  *Hill I*, 2015 WL 1734996, at *3; *Barnes*, 2006 WL 6916834, at *2.

**B.**     **Joint & Several Bond Requirement.**

"Courts routinely require multiple objectors who are appealing the same order to post a bond jointly and severally." *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 645 (N.D. Ohio 2016). This arrangement allows the objectors to pool their resources, making the bond less onerous for any given appellant. *Id.*  (citing, *inter alia*, *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, Civ. A. No. 08–2177 (ES)(JAD), 2014 WL 3667213, at *3 (D.N.J. July 23, 2014) (two objectors); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2013 WL 752637, at *4 (S.D. Ind. Feb. 27, 2013) (two objectors)).  Moreover, because Ms. Tucker and Mr. Vitale have a history

of lodging objections to the same class action settlement, it is even more appropriate that the requested appeal bond be made joint and several.

### C.    The Appeal Bond Should Be Set at $311,175.

An appeal bond of at least $622,350 would ordinarily be warranted in this case, to cover (1) double taxable costs allowable under Fed. R. App. P. 39 ($600); (2) the cost of delay in receiving the settlement funds the Class will suffer caused by the appeal, based on the amount of post-judgment interest for the anticipated one-year it may take for the appeal to be decided ($543,750); and (3) reasonably anticipated attorneys' fees and litigation expenses incurred to oppose the appeal ($78,000 estimate). *See, Barnes*, 2006 WL 6916834, at *1 ("First Circuit case law indicates that 'costs,' as contemplated in Rule 7, include the costs attendant to the delay associated with an appeal, and attorneys' fees, as well as double costs under Fed. R. App. P. 38, and other costs as delineated in Fed. R. App. P. 39."). As explained below, however, Plaintiff requests an appeal bond of only one-half this amount.

### 1.    Taxable Costs Doubled ($600).

Costs on appeal also include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedure, such as the costs to prepare and reproduce the briefs. Fed. R. App. P. 39. Rule 7 costs include those listed in 28 U.S.C. § 1920 and Federal Appellate Rule 39. Rule 39(e) provides that the following costs are taxable: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." In addition, "[t]he costs taxable under [Section] 1920 include the marshal and clerk fees, court reporter fees, printing and witness fees, copying fees, docket fees, and compensation of court appointed experts and interpreters." Meanwhile, Rule 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

Class Counsel estimate that their taxable costs for the appeal under Rule 39 will be approximately $300 to cover the estimated costs for preparing and copying the appellate brief and related documents. *See* Adkins Decl. ¶ 9.  Doubling that amount under Rule 7 would be $600. *Barnes*, 2006 WL 6916834, at *3 (doubling anticipated taxable costs for appeal bond purposes).

**2.    Interest ($543,750).**

A Rule 7 bond may also include interest to reflect the costs of delay. *In re Compact Disc*, 2003 WL 22417252, at *1 (citing *Sckolnick*); *accord*, *In re Polyurethane Foam,* 178 F. Supp. 3d at 645 (the court ruled that "$30,463 in lost interest is clearly a type of 'damages' caused by the appeals; thus, it too should be included in the bond"); *see, e.g., Barnes*, 2006 WL 6916834, at *3 (setting appeal bond to include interest for one year calculated at 5.15% rate on a settlement of $12.5 million ($643,750.00)).

Here Plaintiff here requests $543,750 in lost interest on MassMutual's payment per the terms of 28 U.S.C. 1961(a), which provides that interest on judgments in a civil case recovered in district court is calculated from the date of entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment.  Adkins Decl. ¶ 10.  Interest rates are published on the Federal Reserve's web page at https://www.federalreserve.gov/releases/h15/.  *Id*.  Judgment was issued on November 8, 2017 [ECF 309] and average 1-year constant maturity Treasury yield for the week ended November 3, 2017 was 1.45%.[2]  A post judgment federal interest calculator is provided at http://www.mab.uscourts.gov/mab/post-judgment-interest-calculator and produces an interest amount of $543,750 (using a 12 month period, the interest rate of 1.45% and the judgment amount of $37.5 million).  Adkins Decl. ¶ 10.  An appeal bond for the calculated lost interest of $543,750 is just and necessary to protect the Class from the costs of delay resulting from this frivolous appeal.

---

[2] *See* http://www.wsj.com/mdc/public/page/2_3020-keyinrates-20171106.html?mod=mdc_pastcalendar.

**3.**     **Estimated Award of Attorneys' Fees ($78,000).**

The First Circuit has held that a district court need only determine that an appeal "might be frivolous" in order to require the appellants to post a bond that includes the appellee's expected attorneys' fees and expenses as well as administrative costs occasioned by delays resulting from the appeal. *See Sckolnick*, 820 F.2d at 15 (affirming grant of a bond that included attorneys' fees based on the district court's view that "the appeal might be frivolous and that an award of sanctions against [the appellant] was a real possibility"); *In re Pharm. Indus.*, 520 F. Supp. 2d at 277 (noting that "[t]he First Circuit has held that when the district court determines that an appeal may be frivolous, it may require security for the costs, including appellate attorneys' fees that may be awarded on appeal pursuant to Fed. R. App. P. 38 and 39"); *In re Compact Disc*, 2003 WL 22417252, at *2 (granting appeal bond that included amounts for attorneys' fees and expenses and the costs of administrative delays).

Courts in other jurisdictions have required objectors to post an appeal bond including attorneys' fees in similar situations. *See, e.g., In re Polyurethane Foam,* 178 F. Supp. 3d at 645 (including in appeal bond $90,000 in projected attorneys' fees); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2013 WL 4735641, at *4 (E.D.N.Y. Sept. 3, 2013) (same, $50,000 in attorney fees); *Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 WL 3703811, at *2 (N.D. Ohio Aug. 31, 2010) (same, $250,000 for attorney fees); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (same, $50,000 in attorney fees).

Here, the Objectors' appeals plainly meet the *Sckolnick* "might be frivolous" standard; therefore, the Court should include Class Counsel's reasonably anticipated attorneys' fees. Objectors' appeal can reasonably be expected to cause Class Counsel to incur a total of approximately $78,000 in attorneys' fees (conservatively assuming 120 attorney hours averaging $650/hour). Adkins Decl. ¶ 11.   Plaintiff therefore respectfully submits that this amount be included in the required appeal bond.

**D.**   **Plaintiff Would Accept an Appeal Bond Set at Only One-Half the Warranted Amount.**

Although an appeal bond in the amount of $622,350 would ordinarily be warranted in this case under the foregoing First Circuit precedent, Plaintiff is confident that the Court of Appeals will appreciate the lack of substantive merit in Objector's contentions and grant a motion for summary dismissal as it did in *Hill II*, 794 F.3d at 231.  Even the summary process in *Hill II* took approximately five months from notice of appeal to dismissal, however, and in this case (unlike in *Hill II*), Plaintiff will have to brief a motion for summary dismissal. Nevertheless, Plaintiff would accept an appeal bond set at only one-half the otherwise appropriate amount in the hopes of an atypically expedited resolution of Objectors' appeals.

**V.   CONCLUSION**

For the foregoing reasons, Plaintiff and the Class respectfully request that this Court require Objectors, jointly and severally, to post an appeal bond of $311,175, within 7 calendar days of the date of the Court's order.

Dated:  January 9, 2018.                    Respectfully submitted,

/s/ *Jason B. Adkins*
Jason B. Adkins, BBO #558560
John Peter Zavez, BBO #555721
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, 5th Floor
Boston, MA  02114
Phone (617) 367-1040
Fax (617) 742-8280

Andrew S. Friedman (admitted *pro hac vice*)
Francis J. Balint, Jr., BBO #680602
BONNETT, FAIRBOURN, FRIEDMAN &
  BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ  85016
Phone: (602) 274-1100
Fax: (602) 274-1199

and

Mark A. Chavez (admitted pro hac vice)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA  94941
Phone: (415) 381-5599
Fax: (415) 381-5572

*Attorneys for Plaintiff/Class Representative Karen L. Bacchi*


## LOCAL RULES 7.1(A)(2) and 37.1 CERTIFICATION

I hereby certify that pursuant to Local Rules 7.1(A)(2) and 37.1 that Plaintiff has conferred with Defendant's counsel on the matters set forth herein and reports that Defendant's counsel has stated that Defendant does not oppose the relief sought by this Motion. Plaintiff has also conferred with counsel of record for Caroline Tucker, who stated that she does oppose this Motion.


Dated:  January 9, 2018.                    /s/ *Jason B. Adkins*
                                            Jason B. Adkins


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. In addition, a copy of the foregoing was mailed this 9th day of January, 2018 to *pro per* Objector Francis Vitale at:

Francis Vitale
1 Sagamore Hill Rd.
Oyster Bay, NY 11771


Dated: January 9, 2018.                   /s/ *Jason B. Adkins*
                                          Jason B. Adkins


16