# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (BOSTON)

| | |
|---|---|
| KAREN L. BACCHI, Individually and on Behalf of all Persons Similarly Situated,     ) <br> ) <br> ) <br> Plaintiff,     ) <br> ) <br> v.     ) <br> ) <br> ) <br> MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,     ) <br> ) <br> ) <br> Defendant.     ) <br> ) | Civil Action No. 12-cv-11280-DJC |

## OPPOSITION TO MOTION TO SET AN APPEAL BOND

Class Member/Appellant, Carolyn Tucker, ("Objector") opposes the Plaintiffs' Motion to Set an Appeal Bond and states in support:

**I.      Objector cannot be required to post a bond for administrative expenses and attorney's fees associated with a class settlement while an appeal is pending because these expenses are not taxable under a specific statute or rule.**

The purpose of an appeal bond is "to ensure payment of costs on appeal." Fed. R. App. R. 7. Here, class counsel requests a bond of $311,175 to cover half of three sets of alleged costs: Fed. R. App. P. 39 ($600); (2) the cost of delay in receiving the settlement funds the Class will suffer caused by the appeal, based on the amount of post-judgment interest for the anticipated one-year it may take for the appeal to be decided ($543,750); and (3) reasonably anticipated attorneys' fees and litigation expenses incurred to oppose the appeal ($78,000 estimate). *See* Bond Memo p 12.

No rule or statute provides that Objector can be liable for the cost of delay and attorney's fees, thus the only possible appropriate amount for bond is $300 in "Rule 39 costs." "[T]hese costs rarely exceed a few hundred dollars when taxed against an appellant. The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R.App. P. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. 2014).

While class counsel claim they are seeking an appeal bond, what they are really seeking is a *supersedeas* bond under Fed. R. App. Proc. 8, which is a bond for delay expenses. The difference between a *supersedeas* bond and an appeal bond is important: an appeal bond is a precondition for appeal, while an appellant can choose to forgo paying a *supersedeas* bond. *In re American President Lines, Inc.,* 779 F.2d 714, 717-18 (D.C. Cir. 1985). But there is no question that the requirements for Fed. R. App. Proc. 8 are not met because Objectors have not sought a stay of this Court's ruling. Fed. R. App. Proc. 7 does not give a district court authority to write Fed. R. App. Proc. 8 out of the rules of federal procedure and require a bond for delay costs as a precondition for appeal. *American President Lines,* 779 F.2d at 718-19.

Class counsel's failure to identify a rule or statute that would render Objector responsible for settlement administration costs is dispositive of the question whether a bond maybe required for these costs. "Because Plaintiffs have not identified any rule or statute that allows them to recover, as costs on appeal, funds spent either notifying class members of Objectors' merits appeals or maintaining the settlement pending those appeals, the district court erred in imposing a Rule 7 appeal bond that included those costs." *Tennille v. W. Union Co.,* 774 F.3d 1249, 1256 (10th Cir. 2014).

Objector invites the Court to consider the fact that most sister courts have defined such

costs to include *only* those costs expressly authorized by rule or statute. In 2017, the 8th Circuit Court of Appeals summarized rulings by sister courts and decided that these delay costs were not appropriate for a bond for a class member who appealed the final approval of the class action.

> The issue is one of first impression in our Court: whether costs associated with delays in administering a class action settlement for the length of a class member's appeal may be included in an appeal bond under Federal Rule of Appellate Procedure 7. While we ordinarily review the imposition of a Rule 7 bond for abuse of discretion, the determination of costs allowable in the bond is a legal question reviewed de novo. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998); *see also Reeder–Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 497 F.3d 805, 808 (8th Cir. 2007) (reviewing de novo the interpretation of federal appellate rules).

> Rule 7 allows a district court to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Appeal bonds are a type of guarantee for an appellee that an unsuccessful appellant can pay the costs the appellee incurs as a result of the appeal. *Tennille v. W. Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014). Appellate courts generally limit "costs on appeal" to "costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Id.*; *see also Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 953 (9th Cir. 2007) (allowing attorneys' fees in a Rule 7 bond only when they are included as recoverable costs under an applicable fee-shifting statute); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) (same); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam) (limiting "costs on appeal" under Rule 7 to "those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39"). The Sixth Circuit, for example, upheld the inclusion of delay-based administrative costs in an appeal bond in part because the applicable state law provided for the prevailing party on appeal to recover "*any damages incurred*, including reasonable attorney's fees and costs." *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 817–18 (6th Cir. 2004) (emphasis added). By the same logic, the Tenth Circuit reversed an appeal bond that included delay costs, as no rule or statute applied allowing for their recovery. *Tennille*, 774 F.3d at 1255.

> We find our sister circuits' approach sensible and fair. By linking the amount of the bond to the amount the appellee stands to have reimbursed, the rule secures the compensation due to successful appellees while avoiding creating "an impermissible barrier to appeal" through overly burdensome bonds. *See Adsani*, 139 F.3d at 76. Accordingly, we hold that "costs on appeal" for Rule 7 purposes

include only those costs that the prevailing appellate litigant can recover under a
specific rule or statute applicable to the case at hand.

*In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614–15 (8th Cir.

2017), *amended*, 855 F.3d 913 (8th Cir. 2017).

In sum, almost the entire amount of the bond class counsel requests consists of

settlement-administration, delay expenses, and attorney's fees that are not defined by statute or

rule as costs and are therefore not permissible components of an appeal bond. Accordingly,

because class counsel has not identified any costs, other than general "appeal costs" that would

be taxable against Objector if she does not prevail on appeal, counsel has offered no basis for

imposition of a bond of $311,175.

## II. The requested bond is being used for an improper purpose

Objector believes that based on the magnitude of the requested bond and the personal

attack of Objector, the underlying purpose of this motion may not be securing costs, but

intimidating Objector from exercising her appellate right. Whereas Objector stands to pocket no

money as a result of this appeal, class counsel *does* have a financial incentive to discourage an

appeal as they will not get paid until the settlement is final.

Not only should the bond motion be rejected on the merits for the reasons explained

above (or greatly reduced), but this Court should reject the improper use of a Rule 7 bond to

deter appeals: "Allowing districts court to impose high Rule 7 bonds where the appeals *might* be

found frivolous risks impermissibly encumbering appellants' right to appeal[.]" *Azizian v.*

*Federated Dept. Stores,* 499 F.3d 950, 961 (9th Cir. 2007);  ("While, in the federal scheme,

appeals found to be frivolous cannot command judicial respect, those possessing merit are

normally a matter of right. Courts accordingly must be wary of orders, even those well-meaning,

that might impermissibly encumber that right." (footnotes omitted)); *Clark v. Universal Builders,*

*Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated."); *see also Vaughn v American Honda Motor*, 507 F.3d 295, 300 (5th Cir. 2007) (cautioning that "imposing too great a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review" (footnote omitted)).

Class counsel seems to have taken the stance that every objector and objector's attorney must have a bad faith motive. Their thinly veiled contempt for objectors should make their motive for the appeal bond apparent. Class counsel claims that their concern is for the class, but the truth is their concern is for themselves. They will not get paid their attorney's fees until the settlement is final. And they will stop at nothing to get their attorney's fees, even if their actions have the effect of bullying a class member to drop her appeal. These actions should not be tolerated.

The availability of an appeal is particularly important for class action objectors, who play a crucial role in the settlement process by speaking for absent class members and ensuring adversarial presentation of issues. "Objectors provide a critically valuable service of providing knowledge from a different point of view [from that of the settling parties.]" *Lane v. Facebook, Inc.*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfield, J., dissenting); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, J.) ("It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally."). Because it is more important that Objector have her opportunity to pursue her potentially meritorious appeal than deny her the opportunity over the supposed risk that her appeal is frivolous, the appeal bond motion should be denied.

### III. Objector is not a serial objector and could prevail on appeal

Objector would like to set the record straight by stating that Objector is not a serial objector and has raised several issues that an appellate court could find persuasive. For example, Objector has argued that the settlement unfairly breaks the class into two groups, in-force and not-in-force class members. Other circuits have reversed approval of settlement that "divided a single class into two groups of plaintiffs that receive different benefits" when second group did not have separate representation. *See Dewey v. Volkswagen AG,* 681 F.3d 170 (3d Cir. 2012); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017), *amended,* 855 F.3d 913 (8th Cir. 2017) (The Court must consider "whether an intraclass conflict exists when class members who cannot claim money from a settlement fund are represented by class members who can.")

Additionally, Objector has argued that the requested attorney's fees are not fair to the class, and it is for these reasons that the Sixth Cicuit rejected the settlement in *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).

> [I]n evaluating the fairness of a settlement," therefore, we look in part "to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir.2013) (internal quotation marks omitted). "[S]uch inequities in treatment make a settlement unfair." *Id.* The same is true of a settlement that gives preferential treatment to class counsel; for class counsel are no more entitled to disregard their "fiduciary responsibilities" than class representatives. *Gen. Motors Pick–Up Litig.,* 55 F.3d at 788. Most class counsel are honorable; but "settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action." *Id.* "[T]he danger being that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991); *see also, e.g., Creative Montessori,* 662 F.3d at 918 ("We and other courts have often remarked the incentive of class counsel" to "agree[ ] with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers"). Thus,

> if the "fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir.2003). Hence the "courts must be particularly vigilant" for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir.2012) (internal quotation marks omitted).

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013)

Here, Objector will utilize cases like *Dry Max Pampers, Dewey v. Volkswagen AG,* and *In re Target Corp. Customer Data Sec. Breach Litig.* and other similar cases to argue that class counsel exchanged higher compensation for themselves in exchange for any compensation for the class and that some members of the class have been unfairly represented. Objector will argue that the attorney's fees are excessive, especially in light of the little compensation for the class. As many appellate courts have overturned settlements for the same reasons as Objector is complaining, Objector believes that she has a good chance that the appellate court will agree with her arguments.

## CONCLUSION

Objector has raised valid objections and is entitled to pursue those objections to their logical conclusion, which includes the right to appeal and to have the appeal heard, without the threat of having to cover supposed costs that are not covered by rule or statute by lawyers whose agendas are not necessarily in the best interests of the class members. The use of appeal bonds to chill the pursuit of legitimate, good-faith appeals is a practice that this Court should emphatically discourage.

The motion to impose an appeal bond should be denied. In the event the Court wishes to grant a bond, it should be limited to actual appeal costs not to exceed a few hundred dollars.

Dated: January 13, 2018                     Respectfully Submitted,

*/s/ Mardi Harrison*
Mardi Harrison
125 Edison Furlong Road
Doylestown PA  18901
(267) 252-1035
Mardi@SueTheBoss.com
Attorney for Objector, Carolyn Tucker

## CERTIFICATE OF SERVICE

The undersigned certifies he electronically filed the foregoing Response via the ECF system for the District Court of Massachusetts, thus effecting service on all attorneys registered for electronic filing.

Dated: January 13, 2018

Respectfully Submitted,

*/s/ Mardi Harrison*
Mardi Harrison